[No. 1452.]

THE STATE OF NEVADA, EX REL. H. C. CUTTING, RELATOR, *v.* C. A. LaGRAVE, STATE CONTROLLER, RESPONDENT.

TRAVELING EXPENSES—SUPERINTENDENT OF PUBLIC INSTRUCTION—HOTEL BILLS NOT INCLUDED.—Hotel bills incurred by the superintendent of public instruction while staying at a place for the purpose of visiting schools, are not a part of the "actual traveling expenses," which, under Gen. Stats., sec. 1292, are to be allowed and paid to that officer. (Syllabus by BIGELOW, C. J.)

ORIGINAL PROCEEDING. Application by the State, on the relation of H. C. Cutting, Superintendent of Public Instruction, for *mandamus* against C. A. LaGrave, State Controller. Writ refused.

The facts appear in the opinion.

*Alfred Chartz*, for Relator:

I. The words " actual traveling expenses " have been construed by all of respondent's predecessors in office and by every legislature since the passage of the law to mean and to include necessary hotel bills. The legislature has passed relief bills and did pay such expenses when previous legislatures omitted to make appropriations for the same. These facts are admitted, but it is claimed that they do not bind. On this point of difference we cite: Sutherland on Statutory Construction, par. 309, last part; Sedgwick on the Construc-

tion of Statutory and Constitutional Law, p. 227, note; also, Sutherland on Statutory Construction, par. 419; *State* v. *Gray,* 21 Nev. 386, and cases cited.

II.   An officer's salary is his private property, and the legislature could not have intended to place duties upon a superintendent of public instruction which would compel him to expend it in their performance, nor to limit his expenses in such manner as to make his personal interests antagonistic to the proper performance of his duties.

*Robt. M. Beatty,* Attorney-General, for Respondent:

I.   Every person, officer or not, must eat and sleep, and whether a state officer eats or sleeps in one place or another is of no consequence to his employer, the state, for it pays him his salary for his every official act, and it is reasonably supposed that out of his salary he needs must pay his expenses of eating and sleeping.   The law says it is his duty to leave home on occasions, and what he would eat at home remains to his advantage uneaten so far as he is individually concerned.   But even say that it works a hardship, yet it is one of those hardships imposed by law, and the officer should know the law's requirements before entering upon the duties of the office, and if he does not and learns it only after being in office, if dissatisfied, he can easily resign.

II.   Relator is a salaried officer of the State.   The statutes of Nevada allow certain officers entitled to salaries or per diem "traveling expenses" or "expenses *in* traveling," *i. e., fare* or transportation, namely:   District judges, superintendents of public instruction and officers having in charge convicts or insane persons, but to officers who receive no salary or per diem, such as regents and members of the board of visitors to the university, as follows:   Regents, no salary, but "necessary expenses in attending meetings" of their board (Stats. 1887, p. 44).   University visitors, no salary, no "traveling expenses," but "board and lodging while at the university." (Stats. 1895, p. 41, sec. 5.)   Officers with convicts or insane persons in charge received *mileage* until 1875 and then per diem, eight dollars per day, and "expenses *in*" (not while) "traveling" and necessary expenses of transportation of prisoners.   This was amended in 1891 to per diem, five dollars

per day and the same expenses for traveling. (Stats. 1875, p. 64; 1891, p. 25.) District judges, salary and necessary expenses paid for traveling by public conveyances. (Stats. 1885, p. 61.) And last, superintendent of public instruction, salary and "actual traveling expenses." (Gen. Stats. 1292.) Hence it is readily seen that without any interpretation or construction of the statute under consideration, save the plain ordinary meaning of its exact language, relator is entitled to actual traveling expenses; not even *actual expenses* even while traveling, but "actual traveling" (not any other of whatsoever kind or character) "expenses."

By the Court, BIGELOW, C. J.:

Original application for a writ of *mandamus* to compel the respondent, as state controller, to draw a warrant upon the treasury in favor of relator, for certain expenses claimed to be payable to him under the following statute: "It shall be the duty of the superintendent of public instruction to visit each county in the state, at least once in each year, for the purpose of visiting schools, of consulting county superintendents, of lecturing and addressing public assemblies on subjects pertaining to public schools; and the actual traveling expenses incurred by the superintendent in the discharge of his duty shall be allowed, audited and paid out of the general fund, in the same manner as claims upon said fund are now allowed, audited and paid; *provided,* that the sum so expended in any one year shall not exceed one thousand dollars." (Gen. Stats. 1292.)

The affidavit for the writ states that the relator visited the schools at Wadsworth and Virginia City, and while at those places necessarily incurred certain expenses at the hotels for board and lodging. The statute permits the payment of "actual traveling expenses." Do these items come within the meaning of those words? It seems to us very clear that they do not. Undoubtedly they are a part of the expenses of the trips which the legislature required the relator to make, and which that body must have known would necessarily be incurred by him in making his visits. It must also have known that if he addressed public assemblies expense would necessarily be incurred in providing a hall for that purpose,

for fuel, lights, etc.    But it seems to have been the intention that none of these expenses should be borne by the State.    It is not the expense of the trip, or the expense incurred after the superintendent arrives at his destination, that is to be paid, but his "actual traveling expenses."    Travel, in visiting a school, is going to and returning from the place where the school is situated.    But, after he arrives there, he certainly is not, during his stay, traveling; consequently his expenses, while there, are not incurred in traveling.    But to make the matter still more certain, and apparently for the purpose of insuring that no general expense of the trips should be included, it is provided that the traveling expenses must be "actual."    There are to be no constructive traveling expenses paid, but only such as are actual; that is, such as are real, *bona fide*, genuine expenses of travel.    Had it been the intention to pay all the legitimate expenses of the superintendent's trips, these words of limitation would not have been used.

Whatever else may be included in the term "actual traveling expenses," we think it was not intended to include hotel expenses while staying at a place for the purpose of visiting the schools or discharging the other duties of the office.

It was said in argument that it has been the custom for many years past to allow and pay such items so incurred by the superintendents, and that such construction of the statute by the officers having power to allow claims against the state is entitled to great weight in determining its meaning.

Where property rights have been built up in reliance upon an erroneous construction of a statute by public officers, or where overturning such a construction would unsettle many important laws, and consequently cause loss and hardship to the community, these considerations sometimes press quite heavily upon the courts, especially if the true construction was really doubtful.    But where such is not the case, and where the statute is as clear as we deem this to be, to so hold would simply be to say that as the state has been, for a long time, paying these illegal claims, it must continue to do so. Contemporaneous construction, no matter how long continued, would never justify such a conclusion as that.    (Endlich, Inter. Stats., sec. 361; *Albright* v. *Bedford County*, 106

Pa. St. 582.) This is said upon the assumption that the statement concerning the payment of the claims is true, as seems to be admitted, or at least not denied, by the attorney-general; but no proof has been made of it, and we can hardly be expected to take judicial notice of the fact.

This would also seem to be a case where it is the duty of the controller to audit the claim before the owner is entitled to a warrant (Gen. Stats. 1811; *State* v. *Doran,* 5 Nev. 399), but the point has not been raised, and we have not considered it.

Writ refused.