Stephenson, J.
 

 This matter is before the court on demurrer to the petition of the relator, William M. Boyd, filed in this court, wherein it is sought to com
 
 *243
 
 pel Joseph T. Tracy, as auditor of state, to issue and deliver to Boyd his warrant on the state treasury in the sum of $36.00, being the amount claimed to be due him as expenses during the period from January 30, 1934, to February 16, 1934, incident to his attendance, as a member of the House of Representatives, upon the second special session of the General Assembly^ of the state of Ohio.
 

 He founds his right to the $36.00 upon the provisions of House Bill No. 4, passed at the second special session of the General Assembly of the state of Ohio.
 

 The following is a copy of House Bill No. 4:
 

 “AN ACT
 

 “To make an appropriation for paying the expenses of the members of the Ninetieth General Assembly, incurred in attending special sessions of the General Assembly, held during 1934.
 

 “Be it enacted by the General Assembly of the State of Ohio:
 

 “Section 1. There is hereby appropriated out of any moneys in the state treasury-to the credit of the general revenue fund and not otherwise appropriated a sum sufficient to pay the expenses of the members of the Ninetieth General Assembly incurred in attending special sessions of the Ninetieth General Assembly, at a rate, not to exceed four dollars per day for room and board, for each legislative day.
 

 “Section 2. In order to be entitled to an expense allowance of four dollars per day, as provided for in section 1 of this act, attendance at each day’s session of the General Assembly by each member thereof, during the special sessions of 1934, shall be evidenced by an answer to seventy-five per cent, or major portion thereof of the roll calls on any legislative day, as shown by the journal for that day and allowed by the clerks of the senate and house of representatives.
 

 “Section 3. Each expense account provided for by this act, shall be signed by the respective members of
 
 *244
 
 the senate and of the house of representatives. Such expense accounts shall be filed by each member of the General Assembly with the clerks of the senate and house of representatives at the end of each week of such special session. Such expense accounts shall be paid out of any moneys in the state treasury to the credit of the general revenue fund, as appropriated in Section 1 of this act, by the clerks of the senate and house of representatives.
 

 “Section 4. There is hereby appropriated to the Ohio senate the sum of seven thousand six hundred and eighty dollars, A-l Salaries; and to the house of representatives the sum of thirty thousand four hundred and sixty-four dollars, A-l Salaries, from the general revenue fund not otherwise appropriated.”
 

 The petition herein alleges in substance that the relator, William M. Boyd, is one of the duly elected, qualified and acting members of the House of Representatives of the Ninetieth General Assembly of Ohio, from Cuyahoga county, and he brings this action in his own behalf and in behalf of all other members of the Ninetieth General Assembly of the state of Ohio similarly situated.
 

 The relator sets out in the petition each and all the provisions of House Bill No. 4; that it was regularly signed by the presiding officers of both houses of the General Assembly; was presented to the governor of the state of Ohio and was not returned by him within ten days after such presentation, and that thereafter on the twenty-eighth day of February, 1934, the bill was filed in the office of the secretary of state; that between January 30 and February 16, 1934, inclusive, the Legislature of the state of Ohio was in special session called by the governor of the state of Ohio, and that relator attended such special session, and at the end of each week during such period he filed with the clerk of the House of Representatives his expense account, duly signed by himself, as did all other mem
 
 *245
 
 bers of the House of Representatives; that he attended such session nine days and the amount of such expense account was $36.00.
 

 On or about March 1, 1934, Dwight L. Matchette, clerk of the House of Representatives, presented a voucher for such expense account, duly approved by himself as such clerk, along with vouchers for the expense accounts of all other members of the House of Representatives, duly approved by him as such-clerk, to the respondent, Joseph T. Tracy, auditor of state, and requested him as auditor of state to issue a warrant on the treasurer of state for relator’s expense account, along with the expense accounts of all other members of the House of Representatives, and that Joseph T. Tracy as auditor of state refused to issue such warrants, and that thereafter on or about March 7, 1934, a like demand was made upon the auditor of state to issue warrants on the treasurer of state for the payment of such expense accounts and the auditor of state again refused so to do.
 

 When these demands were made of the auditor of state to issue the warrants on the treasurer of state in payment of such expense accounts, there was, and has been at all times since, in the treasury of the state of Ohio sufficient funds appropriated and available for such purpose.
 

 Relator further states that the General Assembly of the state of Ohio is now in special session, pursuant to a proclamation issued by the governor of the state of Ohio in pursuance of Section 8 of Article III of the Constitution of Ohio, and that the Ninetieth General Assembly has been in practically constant session since the first Monday in January, 1933; that the members thereof have not the financial means to longer pay for their food and lodging while attending the sessions in Columbus, and it will therefore be impossible to longer obtain the necessary quorum to enact the necessary taxing legislation to finance the government of the
 
 *246
 
 state of Ohio, for which purpose such special session has been called by the governor, and that the living expense of the members of the General Assembly is one of the necessary expenses incidental to conducting such sessions.
 

 These allegations are followed by a prayer that a writ of mandamus issue, commanding Joseph T. Tracy, auditor of state, to issue his warrant on the treasurer of state for the amount of relator’s expense account or show cause why he should not do so.
 

 If House Bill No. 4 is good law, then relator and all other members of' the Ninetieth General Assembly who have answered the requisite number of roll calls are entitled to have the auditor of state issue warrants on the state treasury in a sum not to exceed $4.00 per day for room and board for each legislative day, as relator’s petition follows very carefully the footprints made by House Bill No. 4.
 

 House Bill No. 4 provides for the expenditure of public money, and for that reason should be carefully considered and as carefully construed.
 

 Counsel for respondent insist that House Bill No. 4 is unconstitutional for the reason that, in effect, it either increases the compensation of the members of the Ninetieth General Assembly, including the relator, during their terms of office, or grants to them an “allowance” for expenses, in direct violation of the provisions of Section 31, Article II, of the Constitution of Ohio, which reads as follows:
 

 “The members and officers of the General Assembly shall receive a fixed compensation, to be prescribed by law, and no other allowance or perquisites, either in the payment of postage or otherwise; and no change in their compensation shall take effect during their term of office.”
 

 Counsel for relator claims that Section 31, Article II, of the Constitution does not prohibit the General Assembly from making provision for the payment of
 
 *247
 
 living expenses of its members while in attendance at special session, bnt, if it does, that the situation is taken care of by Section 8 of Article III of the Constitution, namely:
 

 “The governor on extraordinary occasions may convene the general assembly by proclamation and shall state in the proclamation the purpose for which such special session is called, and no other business shall be transacted at such special session except that named in the proclamation, or in a subsequent public proclamation or message to the general assembly issued by the governor during said special session, but the general assembly may provide for the expenses of the session and other matters incidental thereto.”
 

 Eelator sets much store on the last clause of this constitutional provision, namely, “But the general assembly may provide for the expenses of the session and other matters incidental thereto.”
 

 At the outset we accord to House. Bill No. 4 the presumption of constitutionality.
 

 Members of the General Assembly have heretofore received their “pay” under the provisions of Section 50, General Code:
 

 “Every member of the general assembly shall receive as compensation a salary of one thousand dollars a year during his term of office. Such salary for such term shall be paid in the following manner: two hundred dollars in monthly installments during the first session of such term and the balance of such salary for such term at the end of such session.
 

 “Each member shall receive the legal rate of railroad transportation each way for mileage once a week during the session from and to his place of residence, by the most direct route of public travel to and from the seat of government, to be paid at the end of each regular or special session. If a member is absent without leave, or is not excused on his return, there shall
 
 *248
 
 be deducted from his compensation the sum of ten dollars for each day’s absence.”
 

 Our legislators are as a rule men of moderate means, totally unable to respond to the demands made upon their private funds by reason of the numerous special sessions made necessary by public exigency. No blame should attach to the members of the Ninetieth General Assembly in their effort to secure living expenses during their attendance at these special sessions, as there is a debatable constitutional question as to whether or not they are entitled to the $4.00 per day as provided for in House Bill No. 4. Four dollars per day is not an extravagant amount to pay for existence in the city of Columbus, but it is not a question of amount; it is a question of constitutional right.
 

 The General Assembly has full power to fix compensation for its members, but it must be a
 
 fixed
 
 compensation, not an ephemeral one, but
 
 no change in their compensation shall talce effect during their term of office.
 

 An examination of the Constitution will reveal the fact that legislators have not been discriminated against, as no state officer’s compensation can be increased or diminished during the term of office for which he has been elected. There is neither constitutional nor statutory inhibition against members of Congress increasing or diminishing their compensation during the term for which they are elected; but a member of Congress cannot, during the term for which he was elected, be appointed to any civil office under the authority of the United States which shall have been created or the emoluments whereof have been increased during such time. Section 6, Article I, Constitution of the United States.
 

 “The President shall, at stated Times, receive for his Services, a Compensation, which shall neither be increased nor diminished during the Period for which he shall have been elected, and he shall not receive
 
 *249
 
 within that period any other Emolument from the United States, or any of them.” Section 1, Article II, Constitution of the United States.
 

 Judges of the Supreme Court of the United States and of all inferior courts receive a fixed compensation, which shall not be diminished during their continuance in office. Section 1, Article III, Constitution of the United States.
 

 Most of the states have a constitutional inhibition against increasing or decreasing the compensation of public officers during the term for which they are elected, and rightly so, as any other policy would open a wide avenue for imposition.
 

 “The incumbent of an office has no property in it, for his right to exercise it is not based on any contract or grant but is conferred on him as a public trust, to be exercised for the benefit of the public. Such salary as may be attached to any office is not given to the incumbent because of any duty on the part of the public to confer emoluments on him, but to enable him to better perform the duties of the office, for without adequate compensation it cannot be expected that he will be able to give due attention to his official duties.” Ruling Case Law, Yol. 22, page 524, Section 216, and cases cited.
 

 “A constitutional provision forbidding the change of the compensation of an official during his term of office is inexorable. It admits of no exceptions and it affords no opportunity for evasion by the legislature or other body.” Ruling Case Law, Yol. 22, page 534, Sections 228-229.
 

 We are aware that there is authority in Ohio to the effect that to invalidate a statute the repugnancy between the statute and the Consitution must be plain, clear, substantial, palpable, strong, manifest, obvious, necessary, free from doubt and incapable of a fair reconciliation. It is hardly necessary to apply all these adjectives in arriving at a workable rule for deter
 
 *250
 
 mining whether or not a statute is constitutional. "We are content with the rule that if the repugnancy of the statute to the Constitution is such as to render it incapable of a fair reconciliation with the Constitution, it must be declared unconstitutional.
 

 In the face of Section 31 of Article II of the - Constitution of Ohio, House Bill No. 4 must get its constitutional virtue from the last clause of Section 8 of Article III of that instrument, namely, “but the general assembly may provide for the
 
 expenses of the session and other matters incidental thereto
 

 This section of the Constitution deals exclusively with special sessions of the General Assembly, as does House Bill No. 4. Can a fair reconciliation be established between Section 31 of Article II, Section 8 of Article III, and House Bill No. 4?
 

 Relator insists that compensation is one thing and expense is another. That is quite true, but they trot along hand in hand, and when used in connection with members of the General Assembly, or any other public officer for that matter, they bear a close relationship.
 

 Where did the money that paid for the room and board for members during special sessions of the Ninetieth General Assembly since January 30, 1934, come from? It must have come from the pockets of the members. It was their money. It could make no difference whether the particular money was salary and mileage, or the proceeds of a sale of private property. The money has been expended, consequently the money provided by House Bill No. 4 would be reimbursement, and the money for future payments would fall within the same class as the expense accounts that are required to be made out and filed at the end of each week. The legislator must have lived the week before he can get any money. Having .lived the week, it is safe to assume that he paid for his living, and the $4.00 per day goes to replace the dollars he has taken out of his pocket. It is compensation.
 

 
 *251
 
 We are willing to indulge reasonable implication in our effort to reconcile House Bill No. 4 with its most favorable section of the Constitution, but we just cannot follow counsel to the extent of holding that the words “expenses of the session” by necessary implication include “expenses of the members of the general assembly.”
 

 What is said and done by delegates during a constitutional convention relative to a measure before it may become germane in determining not only the legislative intent of such legislative body, but the scope and extent of the measure as well, hence we give consideration to Convention Proceedings and Debates, Vol. 2, page 1351,
 
 et seq.
 
 This is the record of the proceedings of the Constitutional Convention of 1912, and refers to the adoption of Section 8, Article III, of the Constitution. A careful reading of this record develops the fact that Professor G-eorge W. Knight, a delegate from Franklin county, upon offering an amendment to the section, said:
 

 “There is, however, one amendment that comm end a itself to me, and it is one that I have drafted from the Constitution of California. This proposal does not make any provision by which the general assembly can provide for the running expenses of such extraordinary session, and my amendment simply takes care of that.”
 

 Whereupon the amendment was read, as follows:
 

 “At the end of line 11 change the period to a comma and add ‘but the general assembly may provide for the expenses of the session and other matters incident thereto.’ ”
 

 It further appears that the amendment was not discussed, and was adopted by acclamation. Convention Proceedings and Debates, Yol. 2, page 1354.
 

 This amendment proposed by Delegate Knight was timely. Its only infirmity lies in the fact that it could have been more specific. However, the record to the
 
 *252
 
 effect that his amendment was proposed for the purpose of taking care of the “running expenses of such extraordinary session” is definite and explicit.
 

 We are impressed with the distinction made by counsel between “Personal Expenses of Members of the General Assembly” and “Legislative Expenses of Special Sessions.”
 

 This distinction has been recognized in so many jurisdictions that we refrain from making the citations.
 

 The words “and other matters incidental thereto” constitute a broad term, but we dismiss it on the ground that by plain grammatical construction it applies to the session and not to its members.
 

 In arriving at our conclusion in this case we have endeavored to construe the Constitution “in the light of the times,” without permitting that light to blind our eyes to justice and right.
 

 This court has construed statutes similar to House ■Bill No. 4. Section 20, Article II, of the Constitution of 1851, provided:
 

 “The general assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term, unless the office be abolished.”
 

 On March 8, 1888 (85 Ohio Laws, 76), the G-eneral Assembly of the state of Ohio enacted Section 897a, Revised Statutes of Ohio, namely:
 

 “In counties in which, by the last federal census, the population amounted to two hundred and fifty thousand, or upwards, each commissioner shall be allowed for expenses incurred by such commissioner, in the proper discharge of his duties within said county, the sum of ($1000) one thousand dollars per annum. Said sum to be paid out of the county treasury on the warrant of the county auditor.”
 

 “Sec. 2. This.act shall take effect on and after its passage.”
 

 
 *253
 
 Action was brought by a taxpayer to test the constitutionality of the statute, and this court held, in
 
 State, ex rel.,
 
 v.
 
 Raine, Auditor,
 
 49 Ohio St., 580, 31 N. E., 741:
 

 “A
 
 statute, whatever terms it may employ, the only effect of which is to increase the salary attached to a public office, contravenes section 20, of article II, of the Constitution of this state, in so far as it may affect the salary of an incumbent of the office during the term be was serving when the statute was^ enacted.”
 

 This case is cited for the sole and only purpose of showing that the terms “salary” and “compensation” do not mean a thing when cases of this character are being considered, the whole question being, “Can the number of dollars payable to an incumbent of a public office be increased by the enactment of a statute during his term of office?”
 

 This case was decided in 1892, twenty years before Section 8, Article III, was carried into our Constitution.
 

 We have no trouble in effecting a “fair reconciliation” between Section 31, Article II, and Section 8, Article III, of the Constitution of Ohio.
 

 We find, and so hold, that Section 8, Article III, of the Constitution of Ohio, gives to the General Assembly no constitutional warrant for the enactment of House Bill No. 4, and that House Bill No. 4 is violative of Section 31, Article II, of the Constitution, and thereby invalid.
 

 Demurrer to petition sustained.
 

 Weygandt, C. J., Jones, Matthias, Bevis and Zimmerman, JJ., concur.
 

 Wilkin, J., not participating.