[S. F. No. 17019. In Bank. Oct. 2, 1944.]

SAM L. COLLINS, Petitioner, v. HARRY B. RILEY, as State Controller, etc., Respondent.

914

Fred B. Wood, Joseph W. Paulucci and Sidney L. Weinstock for Petitioner.

Robert W. Kenny, Attorney General, Chas. W. Johnson, Supervising Deputy Attorney General, and Raymond McClure, Deputy Attorney General, for Respondent.

GIBSON, C. J.—Petitioner, an assemblyman, seeks a writ of mandate to compel the State Controller to approve a claim for traveling expenses, and to draw a warrant for the amount so approved, in accordance with section 352 of the Political Code which, as amended in 1943, provides that "all Members of the Legislature when attending regular, special or extraordinary session of the Legislature shall be entitled to receive in addition to their salaries, their actual necessary traveling expenses." No question is raised as to the form of the claim or as to the necessity or propriety of petitioner's expenditure of $9.10 for hotel room and meals, and the controller's refusal to approve the claim is based upon the sole ground that section 352, insofar as it authorizes the payment of "actual necessary traveling expenses" to members of the Legislature,

violates section 23 of article IV of the Constitution which states that such members "shall receive for their services the sum of one hundred dollars each for each month of the term for which they are elected . . . and mileage to be fixed by law, . . . such mileage not to exceed five cents per mile."

■ The use of the term "traveling expenses" was perhaps unfortunate, because section 352 cannot be construed as validly increasing the mileage allowance for traveling between a member's home and Sacramento. However, it has been held that this phrase includes hotel room rent and meals, and it is conceded that the section was intended to provide only for the reimbursement of a member's actual living expenses while away from home in attendance at a regular, special or extraordinary session of the Legislature. Since all presumptions and intendments are in favor of the validity and constitutionality of legislative acts (*People* v. *Superior Court,* 10 Cal.2d 288 [73 P.2d 1221]; *Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620 [91 P.2d 577]; *People* v. *Western Fruit Growers,* 22 Cal.2d 494 [140 P.2d 13]; *People* v. *Globe Grain & Mill Co.,* 211 Cal. 121 [294 P. 3]; *Martin* v. *Riley,* 20 Cal.2d 28 [123 P.2d 488]; *Rainey* v. *Michel,* 6 Cal.2d 259 [57 P.2d 932, 105 A.L.R. 148]), and since such acts "will be given a construction consistent with validity if at all possible" (*People* v. *Globe Grain & Mill. Co., supra*), it must be presumed that the Legislature did not intend to increase the mileage allowance but only to provide reimbursement for a member's actual living expenses when attending a session of the Legislature. No question is raised as to the propriety of other provisions of section 352 regarding the expenses of other officers, and respondent's objections are directed solely to the constitutionality of allowing living expenses to members of the Legislature.

■ The validity of this portion of section 352 depends upon a proper construction of section 23 of article IV, which provides that legislators "shall receive for their services" a stated sum "and mileage . . . not to exceed five cents per mile." There is no express prohibition against the allowance of or reimbursement for other expenses, but the respondent contends that under the doctrine of *expressio unius est exclusio alterius,* since the Constitution specifies two items which may be allowed, any other allowances are invalid. ■ This

argument overlooks the fact that our Constitution is not a grant of power but rather a limitation or restriction upon the powers of the Legislature (*In re Madera Irr. Dist.*, 92 Cal. 296 [28 P. 272, 675, 29 Am.St.Rep. 106, 14 L.R.A. 755]; *Macmillan Co.* v. *Clarke*, 184 Cal. 491 [194 P. 1030, 17 A.L.R. 288]; *People ex rel. Smith* v. *Judge of the Twelfth District*, 17 Cal. 547; *Sheehan* v. *Scott*, 145 Cal. 684 [79 P. 350]; *Fitts* v. *Superior Court*, 6 Cal.2d 230 [57 P.2d 510]; *Mitchell* v. *Winnek*, 117 Cal. 520 [49 P. 579]) and "that we do not look to the Constitution to determine whether the Legislature is authorized to do an act, but only to see if it is prohibited." (*Fitts* v. *Superior Court, supra.*) If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations are to be construed strictly, and are not to be extended to include matters not covered by the language used. ▆▆▆ In section 23 the only restrictions are on the amount to be allowed for services ($100 per month) and on the amount for mileage (not to exceed five cents per mile), and the doctrine of *expressio unius* cannot be relied upon to support or incorporate other or additional restrictions. As a matter of fact, if the doctrine of *expressio unius* is applied to section 23 the effect must be to uphold the act of the Legislature. The proper construction of section 23 is that the provisions for payment of $100 per month and mileage "not to exceed five cents per mile" are *limitations* upon the amounts which may be allowed for the purposes specified. Hence, since this portion of section 23 is not a grant of power, but a limitation, and since only two restrictions are mentioned, the doctrine of *expressio unius* can only operate to exclude additional limitations, thereby leaving the Legislature free to act. This principle was recognized in the early case of *California State Telegraph Co.* v. *Alta Telegraph Co.*, 22 Cal. 398, which involved the constitutionality of an act granting an exclusive right to a telegraph line between two cities. The court first laid down the basic rule "that it is competent for the Legislature to exercise all legislative powers not forbidden by the Constitution, or delegated to the National Government, or prohibited by the Constitution of the United States; and that an Act of the Legislature is to be held as void only when its repugnance to the State or National Constitution is clear beyond a reasonable doubt." After calling

attention to constitutional provisions prohibiting the Legislature from conferring the special privilege of banking or issuing paper money, or from creating a body with corporate privileges by special law except for municipal purposes, the court said (p. 424) : "These are all constitutional limitations upon the power to grant franchises, and it is clear they do not prohibit the granting of the privilege vested by this act. From the fact that no other limitations are imposed, it is evident that it was the intention to leave the Legislature free to exercise its discretion in all other cases."

 It is also contended that the allowance to each legislator of $100 per month and mileage is an allowance "for their services" and that the granting of actual expenses for subsistence constitutes an improper increase in the compensation provided for by section 23 of article IV. This contention, however, cannot be upheld, since the state's repayment of such expenses is not the giving of additional compensation, but merely a reimbursement to the legislator for actual cash outlays necessarily incurred for maintenance while away from his home in the performance of his duty. Accordingly, it has been held that "traveling expense" is not compensation for services. (*Kirkwood* v. *Soto*, 87 Cal. 394 [25 P. 488].) However, there is conflicting language in *County of Placer* v. *Freeman*, 149 Cal. 738 [87 P. 628], which involved the validity of payment to a county supervisor for traveling expenses contracted while acting ex officio as road commissioner. At the time the expenses were incurred, and also when the claim was paid, there was no provision in the County Government Act authorizing reimbursement for such expenses, and it was therefore held that the payment was improperly made. The County Government Act being one of delegation and not one of limitation, the payment of such expenses must find support in an express or implied grant of power. Since there was no provision of law authorizing allowance for such expenses, the court rightly held the payment thereof was improper. The County Government Act, however, was subsequently amended to provide for the payment of such expenses and, in discussing the effect of the amendment, the court used language implying that the allowance for expenses amounted to an increase in compensation. This discussion was not necessary for the decision, and contains language contrary to

the holding in *Kirkwood* v. *Soto,* 87 Cal. 394 [25 P. 488], which was not cited. Any statement in the Freeman case in conflict with the views expressed herein is hereby disapproved. The Freeman case was relied upon in *County of Santa Barbara* v. *Rucker,* 35 Cal.App. 676 [170 P. 860], which involved a statute increasing a road commissioner's per diem allowance and providing for the payment of actual traveling expenses. The court quoted from the Freeman case and then said, "It would be inconsistent with that decision to say that a statute newly providing for reimbursement of expenses, in addition to compensation previously allowed for his services, is not an increase of the officer's compensation." Accordingly, it was held that the payment of such traveling expenses was in violation of article XI, section 9, of the Constitution. Any language in the Rucker case inconsistent with our decision here is also disapproved for the reasons given.

When an officer is required to travel in order to perform his duty, the payment of his actual necessary living expenses while away from home is a proper item of state expense and, unless expressly forbidden by the Constitution, it is a proper exercise of legislative authority to provide for the officer's reimbursement. The mere fact that such an officer is given a stated amount as compensation for his services cannot transform into additional compensation the allowance of his actual necessary living expenses while traveling on state business; the allowance, actually and legally, remains nothing more than a reimbursement for expenditures made necessary by reason of his office. Had there been any intention that the compensation for services should include such living expenses, it would have been easy to express that intention in section 23. In the absence of any such expressed intention, the specified limitations on the Legislature's power must be strictly construed and not extended beyond their normal ordinary meaning. The fact that the Legislature has not hitherto made any provision for the reimbursement of legislators does not compel a holding that there has been a contrary construction by the Legislature, since, if it has a right to act, the mere failure to act cannot impair that right, nor can it be held to amount to a contrary construction.

There are decisions of other states holding invalid acts providing for the reimbursement of public officers for traveling

expenses. Some can be distinguished as being based upon different constitutional language; others, it must be conceded, are in conflict with the reasoning contained herein and while they may be persuasive authority they are contrary to *Kirkwood* v. *Soto,* 87 Cal. 394 [25 P. 488], and cannot be reconciled with the settled principle that our state Constitution is not a grant but a limitation of powers.

The most recent cases we have found on this subject are *Peck* v. *State,* 63 Idaho 375 [120 P.2d 820], and *State* v. *Yelle,* 7 Wn.2d 443 [110 P.2d 162]. In the Peck case there was no express grant of subsistence expenses but merely an appropriation for such expenses, and it was held that if the act was a grant to the present members of the Legislature, the appropriation would not be available to future legislators and hence the act as so construed would be void as special legislation. The Yelle case involved the validity of an act appropriating money "for the actual and necessary expenses of the members of the Legislature, actually expended by them for subsistence and lodging while absent from their usual places of residence in the service of the state." The related constitutional provision provides that each member "shall receive for his services five dollars for each day's attendance during the session and ten cents for every mile he shall travel. . . ." The court upheld the validity of the act upon the ground that the reimbursement for living expenses did not constitute an increase in compensation.

The respondent's demurrer to the petition is overruled and, as the attorney general concedes that there is no issue of fact, it is ordered that a peremptory writ of mandate issue requiring the respondent to approve petitioner's claim and to draw a warrant for the amount so approved.

Shenk, J., Traynor, J., and Schauer, J., concurred.

CARTER, J., Concurring.—In my opinion the writ should issue, as there is not the slightest doubt in my mind that the enactment of section 352 of the Political Code as amended in 1943 was within the purview of legislative power and is not prohibited by any provision of the Constitution of California.

It is well settled that the Constitution of California is not, as is the Constitution of the United States, to be considered a grant of power or enabling act to the Legislature, but rather

is a limitation upon the power of that body, and that "the legislature is vested with the whole of the legislative power of the state and may deal with any subject within the scope of civil government unless it is restrained by the provisions of the constitution, and the presumption that the Legislature is acting within the constitution holds good until it is made to appear in what particular it is violating constitutional limitations." (*Macmillan Co.* v. *Clarke,* 184 Cal. 491 [194 P. 1030, 17 A.L.R. 288].) This rule is so elementary and universal that the citation of authority in support of it would be superfluous. (See 5 Cal.Jur. 666-667.) There is no provision of the Constitution prohibiting the Legislature from providing for the payment of the traveling expenses of any state officials including the members of the Legislature. The provision in section 23 of article IV of the Constitution covering mileage clearly relates only to transportation expenses and not to other traveling or living expenses while away from home performing official duties.

The compensation provided for by section 23 of article IV of the Constitution to be paid to members of the Legislature does not include traveling or living expenses. The word "compensation" ordinarily means pay for services rendered, and it is sometimes held to be synonymous with "salary." (*Scroggie* v. *Scarborough* (1931), 162 S.C. 218 [160 S.E. 596] ; *Kirkwood* v. *Soto,* 87 Cal. 394 [25 P. 488] ; *Reynolds* v. *Reynolds,* 14 Cal.App.2d 481 [58 P.2d 660] ; and *Martin* v. *Santa Barbara County,* 105 Cal. 208 [38 P. 687].)

While there appears to be some conflict in the decisions of this court as to whether or not traveling expenses constitute compensation or simply a reimbursement of money necessarily expended in the performance of official duties (see *Kirkwood* v. *Soto, supra; County of Placer* v. *Freeman,* 149 Cal. 738 [87 P. 628] ; and *County of Santa Barbara* v. *Rucker,* 35 Cal. App. 676 [170 P. 860]), I am convinced that the rule announced in the case of *Kirkwood* v. *Soto, supra,* is the correct one and that the holding to the contrary in the cases of *County of Placer* v. *Freeman, supra,* and *Santa Barbara* v. *Rucker, supra,* is unsound and that these cases should be overruled.

It should be noted that section 23 of article IV of the Constitution specifically provides that the members of the Legislature "shall receive *for their services*" a stated sum, and

nothing is said therein with respect to traveling or living expenses.

Furthermore, I can see no escape from the proposition that if the act here in question is unconstitutional, the other provisions of section 352 of the Political Code are likewise unconstitutional for the reason that there is no provision of the Constitution authorizing the Legislature to provide for the payment of traveling expenses of other officials of the state whose compensation is provided for in the Constitution. In other words, if the payment of traveling expenses to a state official when he is away from home on official business constitutes an increase in his compensation, and is therefore prohibited by the Constitution, this prohibition would apply alike to all officials of the state whose compensation is provided for in the Constitution. (*Kirkwood* v. *Soto, supra.*) Section 19 of article V of the Constitution provides:

"The Governor, Lieutenant Governor, Secretary of State, Controller, Treasurer, Attorney General and Surveyor General shall, at stated times during their continuance in office, receive for their services a compensation which shall not be increased or diminished during the term for which they shall have been elected, which compensation is hereby fixed for the following officers, as follows: Governor, ten thousand dollars per annum; Lieutenant Governor, four thousand dollars, the Secretary of State, Controller, Treasurer, and Surveyor General, five thousand dollars each per annum, and the Attorney General, six thousand dollars per annum, such compensation to be in full for all services by them respectively rendered in any official capacity or employment whatsoever during their respective terms of office; *provided, however,* that the Legislature may, by law, diminish the compensation of any or all of such officers, but in no case shall have the power to increase the same above the sums hereby fixed by this Constitution. No salary shall be authorized by law for clerical service in any office provided for in this article, exceeding eighteen hundred dollars per annum for each clerk employed. The Legislature may, in its discretion, abolish the office of Surveyor General; and none of the officers hereinbefore named shall receive for their own use any fees or perquisites for the performance of any official duty."

While the Constitution has been amended with respect to

the compensation and duties of the attorney general (see art. V, § 21, Const.), it has not been amended with respect to the other officials above mentioned and there is no provision authorizing the Legislature to provide for traveling expenses for such officials.

The right of these officials to traveling expenses when traveling on official business in connection with the discharge of their duties has never been questioned, and the validity of the statutory provisions allowing such expenses can only be sustained upon the same basis as the provision here in question.

For the foregoing reasons a peremptory writ of mandate should issue as prayed for.

EDMONDS, J.—There is much to be said in favor of empowering the Legislature to fix the compensation of state officers instead of having the amounts to be paid for their services rigidly set by constitutional provisions. But unless one ignores fundamental principles of law which long have been recognized and applied by this court, I see no escape from the conclusion that, until the People, by their vote, relinquish the right they have retained to determine the amounts to be paid to certain state officers, including the members of the Legislature, the constitutional provisions now in effect are controlling and may not be set aside by judicial decree.

It is significant that until 1943, the People's right in this regard has not been challenged by the Legislature. Indeed, since the adoption of the Constitution of 1879 all proposed changes in the compensation of public officials whose salaries are specified in the Constitution have been submitted to the People in the form of amendments to the organic law. Two of them were approved. The amendment of article VI, section 11, adopted in 1924, this court said, "makes manifest as clearly and tersely as words could do the intent of the framers thereof that the entire matter of the compensation of justices and judges of courts of record in this state, both as to the amount thereof and as to the time and manner of payment thereof, should be transferred from the constitution and reposed in the legislature." (*Sevier* v. *Riley*, 198 Cal. 170, 174 [244 P. 323].) More recently a new section was added enlarging the duties of the attorney general and providing that he

"shall receive the same salary as that now . . . prescribed by law for an associate justice of the Supreme Court. . . ." (Art. V, § 21, adopted 1934.) But in 1942, the voters refused to raise the amount which the members of the Legislature shall receive for their services from $100 to $200 per month.

Since that election the Legislature has asked the People to make other changes which would allow it to revise the amounts payable to persons in public service in accordance with current economic conditions. There is pending for approval at the election to be held next November, a proposed constitutional amendment which, if adopted, will place with the Legislature the responsibility of determining the compensation to be paid to five constitutional officers. The adoption of this measure, it is said in the argument to voters, "is urgently required to overcome a serious obstacle to the effective administration . . . of our State Government" because for the past thirty-six years the salaries of these officers "have been frozen in the State Constitution at a figure which was determined on the basis of their duties, and in the light of salary standards of the year 1908." In the same field of governmental policy is an amendment which would allow the Legislature, by a two-thirds vote of the members of each House, to suspend the present constitutional prohibition against the increase of compensation of any county, township or municipal officer after his election or during his term of office, for any period during which the United States is engaged in war and for one year thereafter (art. XI, § 5). Another proposal to be voted upon at the same time would add a new section specifying, in substantially the same language as the statute of 1943 challenged in the present case, that each member of the Senate and the Assembly shall be allowed expenses necessarily incurred by him while attending legislative sessions.

The varying measure of control which the People have exercised in regard to the amounts payable to members of the Senate and of the Assembly is shown by the changes which have been made from time to time since the adoption of the Constitution of 1879 which provided: "The members of the Legislature shall receive for their services a per diem and mileage, to be fixed by law . . .; such per diem shall not exceed eight dollars, and such mileage shall not exceed ten cents per mile, and for contingent expenses not exceeding twenty-five

dollars for each session." (Cal. Const., art. IV, § 23.) In 1908, the section was amended to read: "The members of the Legislature shall receive for their services the sum of One Thousand Dollars for each regular session, to be paid at such times during the session as may be provided by law, and the sum of ten dollars each for each day while in attendance at a special or extraordinary session, for a number of days not exceeding thirty; and mileage to be fixed by law . . .; and each member shall be allowed contingent expenses not exceeding twenty-five dollars . . . for each regular biennial session." (Cal. Const., art. IV, § 23.) As amended in 1924 and now in effect the provision is: "The members of the Legislature shall receive for their services the sum of one hundred dollars each for each month of the term for which they are elected, to be paid monthly in the even numbered years and to be paid during the regular legislative session in the odd numbered years at such times as may be provided by law and mileage to be fixed by law, . . . such mileage not to exceed five cents per mile." (Cal. Const., art. IV, § 23.)

Upon the adoption of the new provision, the Legislature amended the statute then in effect to specify that the amount fixed by the new enactment should be payable as follows: "The members of the legislature shall receive, as compensation for their services, the sum of two thousand four hundred dollars biennially, during the term for which they shall have been elected, payable as follows: The sum of one thousand two hundred dollars for services during each regular session of the legislature at the rate of twelve dollars per day payable weekly during such regular session, until the sum of one thousand two hundred dollars is paid. In the event of final adjournment before the said sum of one thousand two hundred dollars is paid, then the balance shall be immediately payable. During the even-numbered year of each biennial said salary of the members of the legislature shall be payable at the rate of one hundred dollars per month, in the same manner and at the same time as salaries of other state officers. Members shall receive for each regular, special or extraordinary session five cents per mile for each mile of travel to and from their residences and the place of holding the session, to be paid upon the convening of the legislature." (Pol. Code, § 266; now codified as Govt. Code, §§ 9300 and 9301.)

The issue, consequently, is whether the Legislature properly may allow itself, in addition to the items enumerated in the Constitution, reimbursement for ''actual, necessary traveling expenses.'' Or, stated another way, do the provisions of article IV, section 23, preclude the allowance of actual, necessary traveling expenses? In this connection, it is conceded that the statute of 1943 does not operate to permit an increase of the mileage allowance provided in the Constitution but rather, the assemblyman contends, the enactment was intended to provide for the reimbursement to legislators of their living expenses while in attendance at either a regular, special or extraordinary session. Certainly, if construed as allowing members of the Legislature in excess of five cents per mile for the expense of traveling between their places of residence and Sacramento, upon well-settled principles the present statute is invalid.

Whether the statute in question is repugnant to the Constitution must be determined entirely by the meaning of article IV, section 23. Where the intent of a constitutional provision clearly and certainly appears from its face, that intent must be given expression by the courts. Accordingly, in jurisdictions where there are constitutional prohibitions against any compensation, perquisite or allowance to legislators other than those expressly provided for, the courts, almost unanimously, have held invalid statutes such as that challenged in the present case. (*Ashton* v. *Ferguson,* 164 Ark. 254 [261 S.W. 624]; *Fergus* v. *Russel,* 270 Ill. 626 [110 N.E. 887]; *State* v. *Tracy,* 128 Ohio St. 242 [190 N.E. 463]; *contra, Christopherson* v. *Reeves,* 44 S.D. 634 [184 N.W. 1015].) In states where, as in California, the constitutional provision fixing the compensation of members of the Legislature does so by enumerating specified items but expresses no prohibition against those not mentioned, by the application of well-settled rules of statutory construction and resort to extrinsic aids, practically without exception it has been held that the allowance of compensation for expenses other than those specified in the Constitution is invalid. (*Hall* v. *Blan,* 227 Ala. 64 [148 So. 601]; *In re Advisory Opinion to the Governor,* 90 Fla. 708 [107 So. 366]; *Gallarno* v. *Long,* 214 Iowa 805 [243 N.W. 719]; *State* v. *Turner,* 117 Kan. 755 [233 P. 510]; *Dixon* v. *Shaw,* 122 Okla. 211 [253 P. 500, 50 A.L.R. 1232];

*Jones* v. *Hoss,* 132 Ore. 175 [285 P. 205]; *Peay* v. *Nolan,* 157 Tenn. 222 [7 S.W.2d 815, 60 A.L.R. 408]; *Peay* v. *Graham,* 162 Tenn. 153 [35 S.W.2d 568]; *State* v. *Clausen,* 142 Wash. 450 [253 P. 805]; *contra: State* v. *Yelle,* 7 Wn.2d 443 [110 P.2d 162].)

Contending that the decision in the present case should be in accordance with the latest determination of the Supreme Court of Washington, the petitioner poses this syllogism: Mileage is compensation (citing *Galeener* v. *Honeycutt,* 173 Cal. 100 [159 P. 595]; *Chapin* v. *Wilcox,* 114 Cal. 498 [46 P. 457]), whereas, traveling expense is not compensation (citing *Kirkwood* v. *Soto,* 87 Cal. 394 [25 P. 488]); consequently an allowance for traveling expense does not constitute an increase in compensation. This reasoning avoids the doctrine of *expressio unius.* However, by relying upon the decision holding that travel expense is not compensation, the petitioner maintains that, because the statute of 1943 authorizes the payment of an item different from that stated in the Constitution, which assertedly deals only with compensation, the rule is inapplicable.

In construing a constitutional provision, its history and purpose properly may be taken into account (*Mundell* v. *Lyons,* 182 Cal. 289, 291 [187 P. 950]; *People* v. *Zolotoff,* 48 Cal.App.2d 360, 365 [119 P.2d 745]); accordingly, a consideration of the subject of compensation of legislators properly commences with the Constitution of 1849. By that document, the People determined: "The members of the legislature shall receive for their services, a compensation to be fixed by law, and paid out of the public treasury; but no increase of the compensation shall take effect during the term for which the members of either House shall have been elected." (Art. IV, § 24.) "Until the legislature shall otherwise direct, in accordance with the provisions of this Constitution, . . . the pay of members of the legislature shall be sixteen dollars per diem, while in attendance, and sixteen dollars for every twenty miles traveled by the usual route from their residences, to the place of holding the session of the legislature, and in returning therefrom." (Schedule, § 15.) In the Constitution of 1879, the People withdrew from the Legislature the unqualified right to fix the pay of its members and limited the amount to a per diem not to exceed $8.00 and mileage not exceeding 10 cents per mile. By an amendment

adopted in 1908, the People specified that $1,000 should be paid to each member of the Legislature for his services at a regular session of that body, and $10 per diem for each day while in attendance at a special session. Mileage was provided for and also contingent expenses. As restricted in 1924, the amount is now fixed at $100 per month and mileage at not to exceed five cents per mile.

This constitutional history shows a progressive trend from the original unlimited right of the Legislature to fix the pay of its members to the present provision now in effect which expressly sets a named sum in money and mileage within a stated amount. The only conclusion which reasonably may be drawn from these changes is that the purpose of each of them was more definitely to determine the pay of members of the Legislature and to circumscribe the right to allow any amounts additional to those explicitly mentioned. Certainly for the last twenty years the Constitution has stated with particularity the amount which each legislator shall receive for his services and has also provided for mileage at a rate within an expressed limit. The well-recognized rule of interpretation contained in the maxim *expressio unius est exclusio alterius* may be resorted to in construing a constitutional provision (*Gilgert* v. *Stockton Port District,* 7 Cal.2d 384, 387 [60 P.2d 847]; *Martello* v. *Superior Court,* 202 Cal. 400, 406 [261 P. 476]; *Yosemite L. Co.* v. *Industrial Acc. Com.,* 187 Cal. 774, 781 [204 P. 226, 20 A.L.R. 994]), and applying that rule to section 23 of article IV, the Legislature may make no additions to the items specified by the People.

Those items are $100 per month and mileage at a specified rate. But it is reasoned that as mileage has been held to be compensation and compensation does not include travel expense, the statute of 1943 provides for the payment of something not included in the constitutional provision. In *Galeener* v. *Honeycutt, supra,* this court considered an allowance of mileage in connection with a constitutional provision prohibiting the increase in compensation of a county officer. The statute construed in that case changed the amount annually payable to a supervisor from $1,200 and mileage, to $1,800. There was no evidence as to the amount which had been collected for mileage under the former statute and therefore no showing as to whether, as a matter of fact, the supervisor would receive, in the aggregate, more money in the future than he had in the

past. Upon that record, and applying the presumption of constitutionality, the new enactment was upheld. An earlier decision, *Chapin* v. *Wilcox, supra,* concerned the construction of a statute allowing a supervisor seven dollars per diem and mileage, "all of which compensation in the aggregate shall not exceed four hundred dollars per annum." The court determined that the limitation applied to the aggregate of the per diem and the mileage.

Neither of these cases is controlling in the present controversy. As ordinarily understood, "mileage" is "an allowance for traveling expenses at a certain rate per mile." (Webster's New Int. Dict., p. 1370.) It is "a payment or charge, at a fixed rate per mile, allowed as a compensation for traveling expenses to members of legislative bodies. . . ." (Black's Law Dictionary [3d ed.], 1185.) The word has also been defined to mean a traveling expense, allowed to compensate public officials for the cost of traveling from their usual place of residence to a place of official duty, usually at a fixed rate per mile. (*Howes* v. *Abbott,* 78 Cal. 270 [20 P. 572] ; *United States* v. *Smith,* 158 U.S. 346 [15 S.Ct. 846, 39 L.Ed. 1011] ; *Steenson* v. *Wallace,* 144 Kan. 730 [62 P.2d 907] ; *Power* v. *County Commissioners,* 7 Mont. 82 [14 P. 658] ; *Caswell* v. *New York Cent. R. Co.,* 263 Mich. 18 [248 N.W. 641] ; *Richardson* v. *State,* 66 Ohio St. 108 [63 N.E. 593] ; *Board of Commissioners* v. *Blakely,* 20 Wyo. 259 [123 P. 72, Ann.Cas. 1915B 584] ; Bouvier's Law Dict. [8th ed.], p. 2209.) Mileage serves merely as a reimbursement for travel expenses. (*United States* v. *Smith, supra; Caswell* v. *New York Cent. R. Co., supra.*) "Traveling expenses," on the other hand, is a broader term, signifying a cash outlay for maintenance away from one's home which includes hotel bills (*Corbett* v. *State Board of Control,* 188 Cal. 289 [204 P. 823] ; *Van Veen* v. *County of Graham,* 13 Ariz. 167 [108 P. 252] ; *State* v. *McClure,* 19 N.M. 389 [143 P. 477] ) ; it is not compensation for services but refers to the incidental expenses of the office (*Kirkwood* v. *Soto, supra*). In Nevada, "traveling expense" was originally defined as coextensive with mileage (*State* v. *La Grave,* 23 Nev. 88 [42 P. 797] ) but, when the statute so construed was amended to include living expenses, a later enactment providing for traveling expenses was construed in *pari materia* to include compensation for board and room (*Abel* v. *Eggers,* 36 Nev. 372 [136 P. 100] ).

But the difference in meaning between these terms is not decisive of the present controversy. Each of them is used to signify an item of personal expense, that is to say, an amount which will vary with the distance traveled by each person authorized to claim reimbursement and the cost of the room, meals and incidentals in connection with the journey which were ordered and paid for by him. If, as the petitioner insists, mileage, one of these items of personal expense, is compensation, then an additional allowance for other personal expense is also compensation. Most certainly traveling expenses are compensation to the extent that when allowed and paid to a public officer they increase the amount which he receives on account of that office and the governmental cost of carrying on the work which he was selected to perform. Whether the total cost of the office to the public has been increased is the test which this court invariably has laid down in construing statutes fixing compensation or adding items of expense. For example, a statute authorizing the employment of an additional deputy at a salary to be paid by the county has been held to increase the compensation of an officer required to pay for the services of persons employed to assist him in performing his official duties. The increase in compensation results when additional money from the public treasury must be paid for performance of the duties of the office. (*Wines* v. *Garrison,* 190 Cal. 650 [214 P. 56, 26 A.L.R. 1302]; *Forward* v. *County of San Diego,* 189 Cal. 704 [209 P. 993]; *Dougherty* v. *Austin,* 94 Cal. 601 [28 P. 834, 29 P. 1092, 16 L.R.A. 161]; *Conklin* v. *Woody,* 33 Cal.App. 554 [165 P. 973]; *McFadden* v. *Borden,* 28 Cal.App. 471 [152 P. 977].) But if mileage is not compensation it is a charge of the same class as traveling expense and in either event, the allowance made by the statute of 1941 is violative of the Constitution insofar as it provides for the payment of traveling expenses of legislators.

This conclusion is supported by the overwhelming weight of authority in this country. In jurisdictions where the Constitution has contained express limitations against any compensation, perquisite or allowance other than a stated salary or per diem and mileage, it has been held that no other payments may be made. (*Ashton* v. *Ferguson, supra; Fergus* v. *Russel, supra; State* v. *Tracy, supra.*) Constitutional provisions against increasing the compensation of legislators

have furnished another ground for invalidating statutes similar to section 352 of the Political Code, as amended. (*Gallarno* v. *Long, supra; Fergus* v. *Russel, supra; State* v. *Tracy, supra.*) Without such prohibition, statutes such as that section have been construed as providing for an unlawful increase in the amount of compensation specified in the Constitution. (*Hall* v. *Blan, supra; In re Advisory Opinion to Governor, supra; Gallarno* v. *Long, supra; State* v. *Turner, supra; Dixon* v. *Shaw, supra; Jones* v. *Hoss, supra; Peay* v. *Graham, supra; Peay* v. *Nolan, supra;* cf. *State* v. *Thomason,* 142 Tenn. 527 [221 S.W. 491].) These cases proceed upon the theory that, by applying the doctrine of *expressio unius est exclusio alterius,* the salary or per diem and mileage specified in the Constitution limits the amount of personal or traveling expense to which a legislator is entitled as compensation. The recent decision in *State* v. *Yelle, supra,* is to the contrary, but that determination was made upon the ground of economic necessity. "Constitutional provisions are static," said the court at the outset of the majority opinion, "and properly and intentionally so, but the purchasing power of the dollar is not." The statute of 1941 providing for "the necessary and actual expenses of the members of the Legislature," the court continued, was enacted with the intention of providing a remedy for the "admittedly unfortunate condition" of the legislators in being required to maintain themselves at the state capital upon an amount fixed by the People many years ago. This decision departed from the rule laid down in *State* v. *Clausen,* 142 Wash 450 [253 P. 805], in which the court said with regard to a similar statute: "Constitutions do not change with the varying tides of public opinion and desire. The will of the people therein recorded is the same inflexible law until changed by their own deliberative action."

The invalidity of section 352 of the Political Code, as amended, may also be based upon the contemporaneous construction of the Constitution. From 1879 to 1943 the Legislature took no action to require the state to pay the traveling expenses of its members, and although no determination by the Legislature as to the meaning of a constitutional provision is binding upon the courts, long continued interpretation of a section having a doubtful meaning is entitled to great

weight. (*People* v. *Southern Pac. Co.*, 209 Cal. 578 [290 P. 25].) It may be argued that this rule is not here applicable because when the Legislature acted it passed the challenged statute, thereby construing the Constitution as placing no limitation upon the right of that body to provide for the traveling expenses of its members. ''Where more than one reasonable meaning exists, it is our duty to accept that chosen by the Legislature,'' this court declared in *Pacific Indemnity Co.* v. *Industrial Acc. Com.*, 215 Cal. 461 [11 P.2d 1, 82 A.L.R. 1170], and the legislative construction has been said to be ''controlling on the courts.'' (*Spring Valley Co., Ltd.* v. *Johnson*, 7 Cal.App.2d 258 [46 P.2d 294].)

But in considering the question now presented for decision, it is significant that for more than sixty years the Legislature took no action for the purpose of having the state pay the traveling expenses of its members. During that time section 23 of article IV twice has been amended. In 1924, when the second change was made, the argument submitted in behalf of the amendment stated that its purpose was ''to increase the compensation of the members [of the Legislature] so as to more adequately compensate them for their living expenses and their loss in business entailed during the session.'' The Legislature of 1941 proposed to the People that the Constitution be amended to increase the compensation of legislators from $100 to $200 per month. (Stats. 1941, chap. 100, p. 3508.) The argument submitted in favor of the proposed measure read in part as follows: ''Nor is all the pay that they now receive 'compensation.' Most of it is used up by the high cost of living away from home, since much more must be used for this purpose now than was the case when the present law was adopted.'' This amendment was rejected by the People at the election of November 3, 1942. Although an argument sent to the voters is not controlling it may be resorted to when necessary as an aid in determining the intention of the framers of a measure and of the electors in adopting the proposal (*Carter* v. *Commission on Qualifications, etc.*, 14 Cal.2d 179, 185 [93 P.2d 140]; *People* v. *Ottey*, 5 Cal.2d 714, 723 [56 P.2d 193]). Each of these arguments justified an increase in the amounts then paid to members of the Legislature for their services because of the inadequacy of those amounts to meet living expenses at the state capital. Impliedly, at least,

by submitting the proposed measure to the People, the Legislature recognized its inability to authorize the payment of any sums additional to those mentioned in the Constitution, and it is significant that in 1943 the Legislature submitted to the electors a new proposal which is to be voted upon next November. The pending measure would add, as a new section of the Constitution: "Members of the Legislature shall receive no compensation for their services other than that fixed by the Constitution but each member shall be allowed and reimbursed expenses necessarily incurred by him while attending regular, special and extraordinary sessions of the Legislature. The amount of the expense necessarily incurred by the respective members, while attending any such sessions, shall be determined and payment thereof provided for by joint rules of the Senate and Assembly. Such expense allowances may equal but shall not exceed the expense allowances now authorized for other elected State officers." (Stats. 1943, p. 3308, chap. 95.)

In the face of almost the same constitutional history and legislative interpretation, in 1929 the Legislature of Iowa enacted a statute providing for the payment to each member of the general assembly of his "actual necessary expenses" incurred at a session. The last change in the pay of the legislators was made in 1911 after debates in which they justified an increase because their personal living expenses had become higher. "Clearly it is indicated thereby," said the Supreme Court of Iowa, "that the members of the Legislature themselves understood that their personal expenses were to be paid from the compensation which they received from the state." And in further comment upon that record, it was said: "Each successive Legislature after the adoption of the Constitution interpreted it to mean that there was a distinction between legislative and personal expenses, until the Forty-Third General Assembly passed the act now in question. After that history and those years of uninterrupted uniform interpretation, together with the great weight of authority in the sister states, as before indicated, sound constitutional interpretation compels the conclusion that the personal expenses contemplated by chapter 1, Acts of the Forty-Third General Assembly are personal as distinguished from legislative expenses, and therefore amount to and are additional compensa-

tion to the legislators.'' (*Gallarno* v. *Long, supra.*) The legislative interpretation in this state compels the same conclusion.

For these reasons, in my opinion, the writ of mandate should be denied.

Curtis, J., concurred.