[S. F. No. 11808. In Bank.—February 17, 1926.]

## DENVER SEVIER, Petitioner, v. RAY L. RILEY, as Controller, etc., Respondent.

[1] JUDGES—FIXING OF COMPENSATION—LEGISLATIVE CONTROL—CONSTITUTIONAL LAW.—Under the provision, contained in the 1924 amendment to section 11 of article VI of the constitution, that "The compensation of the justices or judges of all courts of record shall be fixed and the payment thereof prescribed by the legislature," it was the intent of the framers thereof that the entire matter of the compensation of justices and judges of courts of record, both as to the amount thereof and as to the time and manner of payment, should be transferred from the constitution and reposed in the legislature, and that whatever former provisions of the constitution touching that subject were found to be inconsistent with the exercise of such plenary legislative control should be abrogated.

[2] ID.—CONFLICTING LEGISLATION — REPEAL BY IMPLICATION. — While repeals by implication are not favored in law, such rule can have no applications to situations wherein the language of the later amendment is plain, direct and inclusive and is manifestly inconsistent and in conflict with the earlier provisions of the amended instrument.

[3] ID.—INCREASE OF SALARIES—CONFLICTING CONSTITUTIONAL PROVISIONS—REPEAL.—The provision, contained in the 1924 amendment to section 11 of article VI of the constitution, that "The compensation of the justices or judges of all courts of record shall be fixed and the payment thereof prescribed by the legislature," is inconsistent and in conflict with the provision of section 17 of said article relating to increasing or decreasing the salaries of

1. See 14 Cal. Jur. 791.
2. See 23 Cal. Jur. 694; 25 R. C. L. 918.

certain superior court judges during the term of office for which
they were elected, and to the extent of such conflict said section
17 has been abrogated by said later amendment.

(1) 33 C. J., p. 953, n. 61; 36 C. J., p. 958, n. 1; 31 Cyc., p. 1165,
n. 51, 52, 52 New.   (2) 12 C. J., p. 709, n. 52, p. 725, n. 9 New.
(3) 33 C. J., p. 951, n. 27 New.

PROCEEDING in Mandamus to compel the State Con-
troller to draw his warrant in payment of the salary of peti-
tioner.   Writ issued.

The facts are stated in the opinion of the court.

Denver Sevier, *in pro. per.,* for Petitioner.

U. S. Webb, Attorney-General, and Charles A. Wetmore,
Jr., Deputy Attorney-General, for Respondent.

RICHARDS, J.—The petitioner herein in his capacity as
judge of the superior court of the state of California, in
and for the county of Humboldt, applies for a writ of man-
date to be directed against the respondent, Ray L. Riley, as
controller of the state of California, to approve the claim of
the petitioner for the sum of $208.33 and to draw his war-
rant upon the state treasurer therefor, said claim being for
the sum to which the petitioner as said superior judge al-
leges himself to be entitled to have paid him by the state as
the portion of his judicial salary for the month of August,
1925, by virtue of the adoption by the legislature of 1925
(Stats. 1925, p. 979) adding a new section to the Political
Code, numbered 738b, and reading as follows: "The annual
salaries of the judges of the superior court of the state of
California in and for the counties of Humboldt, Mendocino
and Siskiyou shall be five thousand dollars; of the county of
Lake shall be four thousand dollars; one-half of which shall
be paid by the state, and the other half thereof by the
county for which the judge is elected or appointed."

The petitioner has also made a similar demand for said
increase in salary for the months of September and October,
1925, and has been met with a similar refusal.

The foregoing section is alleged by petitioner to have be-
come effective on July 24, 1925.   Prior to its adoption the

salary of said petitioner as such superior judge was $4,000 a year, payable monthly, one-half by the county of Humboldt and one-half by the state of California.

Section 17 of article VI of the constitution, dealing with the salaries of judges, as it originally stood, provided that the salaries of the judges of the supreme court and the judges of the superior courts should not be increased or diminished after their election nor during the term for which they were elected, that the salaries of the judges of the supreme court should be paid by the state and the salary of each of the judges of the superior courts should be paid one-half by the state and one-half by the county for which he was elected. The section specifically provided that the annual salary for the first term of the judges of the supreme court elected under the constitution should be $6,000, and the annual salaries of the judges of the superior courts, until changed by the legislature, should be $3,000 in all counties except certain enumerated counties in which the judges should receive an annual salary of $4,000.

In 1904 this section of the constitution was amended to provide that the justices of the supreme court and of the district courts of appeal and the judges of the superior courts "shall severally, at stated times during their continuance in office, receive for their services such compensation as is or shall be provided by law, which shall not be increased or diminished after their election nor during the term for which they shall have been elected." (Stats. 1905, p. xxxviii.)

In 1906 this section was again amended. The section as then amended reiterated the provision in the former enactment that the justices of the supreme court and of the district courts of appeal and the judges of the superior courts "shall severally, at stated times during their continuance in office, receive for their services such compensation as is or shall be provided by law," but omitted the provision in regard to the increasing or diminishing of salaries during the terms of offices of the justices of the supreme court, the judges of the district courts of appeal, and the judges of the superior courts as a whole. Said amendment, however, made specific provisions that the salaries of the judges of the superior court in all counties having but one judge, and in all counties in which the terms of the judges of the su-

perior court expired at the same time should not thereafter be increased or diminished after their election nor during the term for which they should have been elected. It also specifically provided that the annual salaries of the judges of the supreme court after January 1, 1907, should be $8,000 per annum, and that of the judges of the district courts of appeal should be $7,000. (Stats. 1907, p. xxix.)

By this section the constitution itself specifically provided the salaries payable to the justices of the supreme court and the justices of the district courts of appeal, and left the fixing of the salaries of the judges of the superior courts to the legislature, subject to the one limitation that the salaries of judges of the superior court in all counties having but one judge and in all counties in which the terms of the judges expire at the same time, should not be increased or diminished after their election nor during the term for which they were elected.

[1] In 1924 at the November election the people of the state amended certain sections of the constitution. Section 11 of article VI of the constitution was among the sections thus amended. This amendment, in addition to authorizing the establishment of municipal courts and other inferior courts, provides that ''The compensation of the justices or judges of all courts of record, shall be fixed and the payment thereof prescribed by the legislature.'' (Stats. 1925, p. xxiv.) In the meantime, and while these constitutional changes up to and including that of the year 1906 were being effected, the state legislature, responding to the demands of the more populous counties of California, due to their increase in population and corresponding increase in litigation, adopted various enactments increasing, and in some counties again and again increasing, the number of superior judges assigned to such regions, and in so doing provided for the expiration of the terms of these additional judicial officers at different times from that of those holding office under previous conditions of the law. The result of these changes in the statutes, especially since 1906, has been that of enabling a goodly number of the counties of the state to be exempted from the constitutional inhibition against an increase in the salaries of their superior judges to become effective during their respective terms of office, by the simple expedient of adding one or more to the num-

ber of their superior judges with terms expiring at different times than those already provided. The result of these changes in the constitution and statutes prior to and up to the year 1924 was this: that as to the supreme and appellate justices the salaries of these, both as to the amount and payment thereof, were rigidly fixed by the terms of section 17 of article VI of the constitution; that as to superior judges the salaries of these were subject to fixation by the legislature, limited by the provision in said section 17 of article VI of the constitution to the effect that in counties having but one superior judge, or, if more, having the terms of these expiring at the same time, there should be no legislative increase in the salaries of these one or more judges which could become effective during their terms of office; while as to counties which had by legislative action effected an increase in the number of their judges so worded as to make the terms of their judgeships expire at different times, the constitutional inhibition was inapplicable and that the increases in such salaries as the legislature from time to time provided for in such counties became effective immediately. On the fourth day of November, 1924, the people of the state of California ratified the amendment to the state constitution relating to the creation of municipal courts. By the terms of said amendment a radical change in the number and jurisdiction of the courts of record of the state of California was provided for. Municipal courts, which were to be courts of record and which were to possess and exercise a large measure of the jurisdiction which had theretofore been reposed exclusively in the state system of superior courts, were permitted to be established in counties, cities, and cities and counties of a designated population. The fixation of the salaries of the judges of these new courts of record having such original jurisdiction was to be wholly committed to the legislature, and this may furnish an additional reason why the framers of said amendment to the constitution placed therein the provision reading: "The compensation of the justices or judges of all courts of record shall be fixed and the payment thereof prescribed by the legislature." There is no room for doubt as to the interpretation to be given to this clause in said amendment to the constitution, since it makes manifest as clearly and tersely as words could do the intent of the framers thereof that

the entire matter of the compensation of justices and judges of courts of record in this state, both as to the amount thereof and as to the time and manner of payment thereof, should be transferred from the constitution and reposed in the legislature. This is made all the more manifest when we take note of the meaning of the word *"prescribed"* as employed therein. The term "prescribe" is defined by the lexicographers as meaning, "To lay down beforehand as a rule of action; to ordain, appoint, define authoritatively." (Century Dictionary.) "To lay down authoritatively as a guide, direction, or rule of action; to impose as a peremptory order; to dictate, appoint, direct, ordain." (Webster's New International Dictionary.) In Words and Phrases it is stated: "The word prescribed has a well defined legal meaning denoting to lay down authoritatively as a guide, direction or rule; to dictate; to appoint; to direct; to give as a guide, direction or rule of action." (Words and Phrases, 2d series, "Prescribe," p. 1154 and cases cited.) Among the cases cited in support of the foregoing definition is that of *Merchants Exchange* v. *Knott*, 212 Mo. 616 [111 S. W. 565, 571], in which the meaning of the word is traced back through Kent and Sharswood to Blackstone, through which original sources we derive our best definition of civil or municipal law as being "a rule of civil conduct *prescribed by the supreme power of a state."* It is in the foregoing broad and general sense that we must assume this word to have been used by the framers of the clause in the constitutional amendment in question and as intending thereby to invest the state legislature with the fullest measure of control, direction, ordination, and dictation over the matter of the amount and payment of judicial salaries in and for the courts of record of this state. The amendment in question contains but one limitation upon the completeness of this direction and control through its express retention in the constitution of its former requirement having relation to the prompt decision of submitted causes. In all other respects the amendment is ample and inclusive. It is true that the same amendment does not expressly refer to section 17 of article VI of the constitution, which relates to the compensation of the justices of the supreme and appellate courts and also of the judges of superior courts, and that whatever repeal of whatever portion of said section 17 is effectuated

by said amendment to the constitution is a repeal by implication. [2] Granting the correctness of the rule that repeals by implication are not favored in law, such rule can have no application to situations wherein the language of the later amendment is plain, direct, and inclusive and is manifestly inconsistent and in conflict with the earlier provision of the amended instrument. [3] It requires no argument to show that this amendment is so as to the compensation of the justices of the supreme and appellate tribunals and that to that extent at least section 17 of article VI of the constitution has been abrogated by said later amendment; and we are of the opinion that the same reasoning is to be applied to the remaining portion of said section having relation to the matter of the payment of salaries of certain superior court judges having terms expiring at the same time. The retention in the constitution of the fragmentary portion of section 17 of article VI of the constitution last above referred to would be hostile to the spirit and intent of the amendment in so far as the latter was designed to commit the matter of judicial salaries in all these various courts of record to the flexible control of the legislature rather than to the rigid limitations of the constitution; especially in view of changing conditions arising from the rapid increase in population, and consequent litigation, going on as a matter of common knowledge in various portions of the state of California at the present time.

The foregoing considerations would seem to furnish ample reason for the conclusion that the framers of the recent amendment to the constitution intended by the clause therein, above quoted, to commit the entire subject of the compensation of the justices and judges of all courts of record in this state, both as to the amount thereof and as to the time and manner of payment, to the legislature and to abrogate whatever of the former provisions of the constitution touching that subject were found to be inconsistent with the exercise of such plenary legislative control.

Let the writ issue directing the issuance of warrants upon the state treasurer for the payment of the claims of the applicant herein conformably to the terms of his petition.

Waste, C. J., Shenk, J., Seawell, J., and Lawlor, J., concurred.