[No. D056266. Fourth Dist., Div. One. Dec. 28, 2010.]

HAROLD P. STURGEON, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents;
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Intervener and
Respondent.

COUNSEL

Judicial Watch, Inc., and Sterling E. Norris for Plaintiff and Appellant.

Jones Day, Elwood Lui, Brian D. Hershman and Erica L. Reilley for Defendants and Respondents.

Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., and Kahn A. Scolnick for Intervener and Respondent.

OPINION

**BENKE, Acting P. J.**—This is the second time this case has reached us on appeal. In our first opinion, *Sturgeon v. County of Los Angeles* (2008) 167 Cal.App.4th 630 [84 Cal.Rptr.3d 242] (*Sturgeon I*), we reaffirmed the principle that judicial compensation is a state, *not* a county, responsibility. We found that by providing substantial employment benefits to its superior court judges, defendant County of Los Angeles (the county) violated article VI, section 19 of our Constitution, which requires that compensation for judges be prescribed by the Legislature. Thus we reversed an order granting the county's motion for summary judgment on plaintiff Harold P. Sturgeon's claim that payment of the employment benefits was unlawful.

Shortly after we filed our opinion in *Sturgeon I* and while the Legislature was in a special session, the Legislature passed and the Governor signed legislation which addressed the constitutional defect we identified in *Sturgeon I*. In particular, the legislation required that all counties continue to provide sitting judges with whatever benefits the counties had provided as of July 1, 2008. The Legislature permitted the counties to terminate this obligation, but not with respect to sitting judges and only after giving the Administrative Office of the Courts and any affected judges 180 days' notice.

On remand Sturgeon asserted the legislation was invalid on three grounds. He argued the legislation was outside the scope of the Governor's proclamation calling the special session, did not adequately prescribe benefits judges are to be provided, and in any event violated equal protection principles by continuing a statewide system of unequal judicial benefits. The trial court rejected these contentions and granted the county's motion for summary judgment.

 The legislation Sturgeon challenges, as enacted, implemented an *interim* response to the constitutional issues we addressed in *Sturgeon I*. As we shall explain, the legislation fell within the scope of the Governor's proclamation, adequately prescribed the benefits that must be provided to judges, and did not intrude upon any judge's right to equal protection of the laws. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Sturgeon I*

Sturgeon commenced these proceedings in April 2006 by filing a taxpayer lawsuit against the county under the provisions of Code of Civil Procedure section 526a. Sturgeon's lawsuit challenged the county's annual payment of employment benefits to judges sitting in the county beyond the salary prescribed by the Legislature and in addition to employment benefits, including health care, disability insurance and life insurance provided to the judges by the state. In fiscal year 2007 each judge in Los Angeles was eligible to receive $46,436 in benefits from the county, which amounted to approximately 27 percent of their prescribed salary and cost the county approximately $21 million. Among other claims, Sturgeon alleged the benefit payments violated article VI, section 19 of the California Constitution, which in pertinent part requires that the Legislature "*prescribe* compensation for judges of courts of record." (Italics added.) The trial court granted the county's motion for summary judgment, finding no merit in Sturgeon's claims under article VI, section 19. Sturgeon also claimed the benefits were barred by the Lockyer-Isenberg Trial Court Funding Act of 1997 (Lockyer-Isenberg) (Gov. Code, § 77200 et seq.; Stats. 1997, ch. 850, §§ 1, 46, pp. 5968, 5991), were unlawful gifts of public funds, and amounted to an unlawful waste of public funds. The trial court rejected those claims as well.

On appeal we agreed with Sturgeon's California Constitution article VI, section 19 contention and reversed the order granting summary judgment. (*Sturgeon I, supra*, 167 Cal.App.4th at p. 657.)[1] We held the benefits the county provided were compensation within the meaning of the Constitution and had not been prescribed by the Legislature. (167 Cal.App.4th at p. 657.) We noted however that while the requirement of the Constitution that the Legislature prescribe judicial compensation was important, it was not onerous and required only that the Legislature "consider the specific issue and, at a minimum, establish or reference identifiable standards" by which benefits would be provided to judges. (*Ibid.*)

---

[1] We agreed with the trial court that the benefits were not barred by Lockyer-Isenberg and were neither a gift nor a waste of public funds. (*Sturgeon I, supra*, 167 Cal.App.4th at pp. 637–642.)

### B. *Senate Bill X2 11*

Our opinion in *Sturgeon I* was filed on October 10, 2008, and modified on November 7, 2008.[2] On December 1, 2008, the Governor issued a proclamation calling the Legislature into a special session. The proclamation convened the Legislature in pertinent part: "To consider and act upon legislation to address the economy, including but not limited to efforts to stimulate California's economy, create and retain jobs, and streamline the operations of state and local governments." During the special session, the Legislature passed Senate Bill No. 11 (2009–2010 2d Ex. Sess.) (Senate Bill X2 11), which the Governor signed on February 20, 2009. Senate Bill X2 11 became effective on May 21, 2009.

Section 1 of Senate Bill X2 11 states: "(a) It is the intent of the Legislature to address the decision of the Court of Appeal in Sturgeon v. County of Los Angeles (2008) 167 Cal.App.4th 630 [84 Cal.Rptr.3d 242], regarding county-provided benefits for judges.

"(b) These county-provided benefits were considered by the Legislature in enacting the Lockyer-Isenberg Trial Court Funding Act of 1997, in which counties could receive a reduction in the county's maintenance of effort obligations if counties elected to provide benefits pursuant to paragraph (1) of subdivision (c) of Section 77201 of the Government Code for trial court judges of that county.

"(c) Numerous counties and courts established local or court supplemental benefits to retain qualified applicants for judicial office, and trial court judges relied upon the existence of these longstanding supplemental benefits provided by the counties or the court."

Section 2 of Senate Bill X2 11 added section 68220 to the Government Code. Section 68220 provides: "(a) Judges of a court whose judges received supplemental judicial benefits provided by the county or court, or both, as of July 1, 2008, shall continue to receive supplemental benefits from the county or court then paying the benefits on the same terms and conditions as were in effect on that date.

"(b) A county may terminate its obligation to provide benefits under this section upon providing the Administrative Director of the Courts and the impacted judges with 180 days' written notice. The termination shall not be effective as to any judge during his or her current term while that judge continues to serve as a judge in that court or, at the election of the county,

---

[2] The Supreme Court denied review in *Sturgeon I* on December 23, 2008.

when that judge leaves office. The county is also authorized to elect to provide benefits for all judges in the county."[3]

Section 6 of Senate Bill X2 11 required that the Judicial Council analyze and report to the Legislature on statewide benefits inconsistencies on or before December 31, 2009.

### C. *Proceedings on Remand*

On remand and following the Legislature's enactment of Senate Bill X2 11, the county again moved for summary judgment, arguing the Legislature had remedied the deficiency we identified in *Sturgeon I.* Sturgeon opposed the county's motion and moved for summary judgment himself. As we have noted, Sturgeon argued Senate Bill X2 11 was beyond the scope of the Governor's special session proclamation, did not adequately prescribe the benefits the county provided, and did not provide equal benefits which Sturgeon argued was required by the equal protection provisions of the state and federal Constitutions. The trial court granted the county's motion, denied Sturgeon's and entered judgment in favor of the county. Sturgeon filed a timely notice of appeal.

## DISCUSSION

### I

We review de novo the trial court's order granting summary judgment. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) In particular, questions of statutory construction are questions of law and also subject to de novo review. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].)

### II

Article IV, section 3, subdivision (b) of the California Constitution states in pertinent part: "On extraordinary occasions the Governor by proclamation may

---

[3] Section 3 of Senate Bill X2 11 added Government Code section 68221, which provides in pertinent part that for purposes of Government Code sections 68220 and 68222: "(a) 'Benefits' and 'benefit' shall include federally regulated benefits, as described in Section 71627, and deferred compensation plan benefits, such as 401(k) and 457 plans, as described in Section 71628, and may also include professional development allowances."

cause the Legislature to assemble in special session. When so assembled it has the power to legislate only on subjects specified in the proclamation . . . ." In *Martin v. Riley* (1942) 20 Cal.2d 28, 38–41 [123 P.2d 488], the court considered the nature of this limitation on legislative power during a special session. *Martin v. Riley* arose when, as a result of the attack on Pearl Harbor, the United States entered World War II and the Governor promptly called a special session of the Legislature to, among other matters, " 'consider and act upon legislation augmenting the appropriation for the operation, maintenance and organization of the State Guard . . . and amending sections 321, 340, 395, and 555 of the Military and Veterans Code, with respect to the pay, privileges, allowances, and rights for the State Guard.' " (*Id.* at p. 38.) During the special session, the Legislature passed and the Governor signed legislation which, in addition to the specific matters set forth in the Governor's proclamation, accomplished a major reorganization of the State Guard and gave the Governor the power to call guard members into active service. (*Id.* at p. 31.)

In *Martin v. Riley* members of the guard challenged the validity of the reorganization legislation on the grounds the legislation exceeded the scope of the Governor's proclamation. In rejecting their challenge, the court stated: "[W]hen the governor has submitted a subject to the Legislature, the designation of that subject opens *for legislative consideration matters relating to, germane to and having a natural connection with the subject proper.* [Citation.] Any matter of restriction or limitation becomes advisory or recommendatory only and not binding on the Legislature." (*Martin v. Riley, supra*, 20 Cal.2d at p. 39, italics added.) In broadly interpreting the Legislature's powers during a special session, the court relied on a Texas case interpreting a similar constitutional provision. In that case, *Baldwin v. State* (1886) 21 Tex.Ct.App. 591 [3 S.W. 109], although the governor called the legislature into session to reduce both ad valorem and occupation taxes, a bill which imposed taxes on occupations not previously taxed, was approved. In finding that the new taxes were within the call, the court found: " 'To so legislate as to *reduce the taxes*, and at the same time *provide for the support of an efficient state government*, in our opinion, includes the power to levy taxes upon property and occupations not taxed before. It might be wholly impracticable to accomplish a *reduction* of taxes and at the same time to maintain the state government, without the exercise of such power. . . . Legislative power, except where the constitution has imposed limits upon it, is practically absolute; and where limitations upon it are imposed they are to be strictly construed, and are not to be given effect as against the general power of the legislature, unless such limitations clearly inhibit the act in question.' " (*Martin v. Riley*, 20 Cal.2d at p. 39.) Thus in *Martin v. Riley* the court found that "when the Legislature acting under a special call, undertakes 'to consider subjects and pass laws in response thereto, and such laws receive

the approval of the executive, courts are and should of right be reluctant to hold that such action is not embraced in such call, and will not so declare unless the subject manifestly and clearly is not embraced therein.' " (*Id.* at pp. 39–40.)

In discussing the petitioners' specific objection, the court noted that the reorganization of the guard accomplished by the challenged legislation could be considered as pertinent to the " 'pay, privileges, allowances and rights for the State Guard,' " specifically set forth in the Governor's call. (*Martin v. Riley, supra,* 20 Cal.2d at p. 40.) Importantly, however, the court went further and found that even if the changes made by the legislation were not pertinent to the specific matters set forth in the call "we are again brought to a realization that the call had submitted to the Legislature the subject matter of those sections and when so submitted the Legislature could not be circumscribed in the enactment of any appropriate legislation within that field." (*Id.* at pp. 40–41.)

Here, as we have noted, the Governor called a special session to, among other matters, address the economy and "streamline the operations of state and local governments." Thus, under *Martin v. Riley* the Governor's call opened up the subject of the operations of state and local governments. (*Martin v. Riley, supra,* 20 Cal.2d at pp. 40–41.) Whether the legislation in fact streamlined those operations is not of concern to us: the Governor's proclamation gave the Legislature the power to legislate in the area of state and local government operations. (*Ibid.*) Our opinion in *Sturgeon I* plainly disturbed the existing relationship between the county and the judges sitting in the county's superior courts and by its terms required legislative action if the disputed benefits were to continue. In responding to our opinion, the Legislature plainly dealt with the operations of both state and local government by requiring that local governments continue to provide judges with the benefits pending the report of the Judicial Council with respect to statewide inequity in the payment of those benefits. The legislation, because it manifestly dealt with the operations of superior courts, their relationship with the county governments where they are located and the Legislature's duty to prescribe judicial compensation, was squarely within the area of state and local government operations and hence within the scope of the Governor's proclamation.

## III

Contrary to Sturgeon's contention, Senate Bill X2 11, although an interim solution, satisfied the requirement of article VI, section 19 of the California Constitution that the Legislature prescribe the compensation of judges.

■ As we found in *Sturgeon I*, even when the Legislature bears a nondelegable duty, it may nonetheless permit other bodies to take action based on a general principle established by the Legislature so long as "the Legislature provides standards or safeguards which assure that the Legislature's fundamental policy is effectively carried out." (*Sturgeon I, supra*, 167 Cal.App.4th at p. 653.) In *Kugler v. Yocum* (1968) 69 Cal.2d 371, 377–382 [71 Cal.Rptr. 687, 445 P.2d 303], the court approved a proposed ordinance which set the salary of firefighters in the City of Alhambra by reference to the average pay of firefighters in the City of Los Angeles. Although the ordinance did not set any explicit standards by which salaries were to be set, the court nonetheless found the ordinance contained sufficient safeguards to ensure that the fundamental policy of parity would not be exploited to the detriment of the city: "The proposed Alhambra ordinance contains built-in and automatic protections that serve as safeguards against exploitive consequences from the operation of the proposed ordinance. Los Angeles is no more anxious to pay its firemen exorbitant compensation than is Alhambra. Los Angeles as an employer will be motivated to avoid the incurrence of an excessive wage scale; the interplay of competitive economic forces and bargaining power will tend to settle the wages at a realistic level. As we noted in an analogous area involving the establishment of prices: 'the Legislature could reasonably assume that competition . . . coupled with . . . bargaining power . . . would provide a safeguard against excessive prices. In all probability, that safeguard is at least as effective as any which the Legislature could be expected to provide by promulgating explicit standards . . . .' [Citation.]" (*Kugler v. Yocum, supra*, 69 Cal.2d at p. 382.)

The court reached a similar conclusion in *Martin v. County of Contra Costa* (1970) 8 Cal.App.3d 856 [87 Cal.Rptr. 886] where a statute which set the salary of municipal court attaches in Contra Costa County at the same rate as comparable county employees. "This provision is not an abdication of the Legislature's duty to prescribe the compensation of the attaches of each municipal court. It fixes the compensation of the employees, declares a policy that such compensation shall be commensurate with that furnished county employees with equivalent responsibilities and provides for interim changes, subject to review by the Legislature, in the event there are local changes which would otherwise cause discrepancies in compensation in violation of the legislative policy." (*Id.* at p. 862.)

■ As we have noted, Senate Bill X2 11 requires that counties continue to pay sitting judges the benefits judges in each respective county were receiving as of July 1, 2008, for the balance of any judge's term of office. As to those payments, the counties have no discretion. Thus, as to sitting judges, benefit payments for the balance of their terms are clearly now "prescribed" under even the strictest interpretation of the term.

■ Admittedly, under Senate Bill X2 11 counties are given the option of terminating benefits to judges who were not sitting when Senate Bill X2 11 was passed and terminating benefits for sitting judges when the terms they were serving when the legislation was adopted expire. However, this discretion to terminate benefits is subject to important and substantial safeguards which assure that the Legislature's fundamental decision to continue the benefits is not disturbed in the absence of legislative oversight. First, the face of Senate Bill X2 11 itself makes it clear the Legislature intended to recognize that benefits were paid as a means of attracting qualified judicial officers and that judges have a reasonable and legitimate expectation the benefits previously paid by each county or court will be a part of their compensation. (See Sen. Bill X2 11, § 1, subd. (c).) Moreover, the Legislature, by requiring a report from the Judicial Council with respect to inconsistencies in the payment of benefits, also expressed its intent that, as far as is practical, benefits should be provided to judges on an equitable basis. (Sen. Bill X2 11, § 6.) Finally, any county which terminates benefits must provide judges affected and the Administrative Director of the Courts 180 days' notice. (Gov. Code, § 68220, subd. (b).) This lengthy notice period provides the Legislature ample time in which to review and abrogate any termination of benefits it believes is inappropriate. ■ In sum, the Legislature has plainly articulated its desire that judges continue receiving benefits from counties and courts and that the benefits be paid on an equitable basis. Moreover, by way of the notice requirement it imposed, the Legislature has established a powerful procedural safeguard in the event any county or court acts in a manner inconsistent with the broad policies the Legislature has articulated. By setting broad policies and establishing a safeguard which will prevent any deviation from those policies, the Legislature has fully satisfied the requirements of the Constitution. (See *Kugler v. Yocum, supra,* 69 Cal.2d at pp. 381–382; *Martin v. County of Contra Costa, supra,* 8 Cal.App.3d at pp. 863–864.)

## IV

Finally, Sturgeon argues Senate Bill X2 11 is invalid because it does nothing to immediately address the disparity in judicial benefits paid by various counties throughout the state. Because Senate Bill X2 11 is an interim measure, awaiting further legislative action, we find this argument unpersuasive.

■ We will assume without deciding that as a taxpayer Sturgeon has standing to assert his equal protection argument under Code of Civil Procedure section 526a. (See *Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 29 [112 Cal.Rptr.2d 5].) However, contrary to Sturgeon's contention, the disparity in judicial compensation is not subject to strict scrutiny. Unlike the

discrimination based on wealth which was subject to strict scrutiny in *Serrano v. Priest* (1976) 18 Cal.3d 728, 765–766 [135 Cal.Rptr. 345, 557 P.2d 929], here discrimination based on the geographic location of judges is not a suspect classification. Moreover, the right to employment as a judge is not a fundamental right (see *Rittenband v. Cory* (1984) 159 Cal.App.3d 410, 418–419 [205 Cal.Rptr. 576]) and there is no fundamental right to a certain level of compensation. (See *American Federation of Teachers v. Los Angeles Community College Dist.* (1980) 111 Cal.App.3d 942, 945, fn. 1 [168 Cal.Rptr. 912].) Thus we consider the disparity under the rational basis test and have no difficulty finding such a basis in the Legislature's express recognition that payment of the benefits by various counties and courts is needed to retain qualified judicial officers. (See *Sturgeon I, supra*, 167 Cal.App.4th at p. 639.)

## CONCLUSION

As the parties have recognized, Senate Bill X2 11 both preserved the status quo ante *Sturgeon I* and commenced a process by which the Legislature looks to adoption of a comprehensive judicial compensation scheme. As we have explained, this response to *Sturgeon I* meets the requirements of the Constitution and is wholly sensible under the circumstances. The Legislature is uniquely competent to deal with the complex policy problem of establishing a judicial compensation scheme which both assures recruitment and retention of fully qualified judicial officers throughout the state while at the same time providing equity between judges in different parts of the state. By the same token our role in ensuring that the more general requirements of the Constitution have been met is, under our system of separate governmental powers, quite limited. (See *Community Redevelopment Agency v. Abrams* (1975) 15 Cal.3d 813, 831–832 [126 Cal.Rptr. 473, 543 P.2d 905].) Thus, whatever permanent remedy the Legislature eventually adopts will be entitled to the well-established "judicial deference to the legislative branch." (*Id.* at p. 832.)

However, on its face Senate Bill X2 11 is not a permanent response to either the constitutional issues we identified in *Sturgeon I* or the difficult problem of adopting a compensation scheme that deals with varying economic circumstances in an equitable and efficient manner. Thus, we would be remiss in discharging our duties if we did not state that while the Legislature's *interim* response to *Sturgeon I* defeats the particular challenges asserted by Sturgeon in this litigation, that interim remedy, if not supplanted by the more comprehensive response Senate Bill X2 11 plainly contemplates, most likely will give rise to further challenges by taxpayers or members of the

bench themselves. As we noted at the outset, the issue of judicial compensation is a state, not a county, responsibility. We are confident that the Legislature within a reasonable period of time will act to adopt a uniform statewide system of judicial compensation.

Judgment affirmed.

Nares, J., and Haller, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 16, 2011, S190318.