Filed 12/14/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HAROLD P. STURGEON, | |
| Plaintiff and Appellant, | G051016 |
| v. | (Super. Ct. No. BC541213) |
| COUNTY OF LOS ANGELES et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Kirk H. Nakamura, Judge. Affirmed.

Judicial Watch, Inc., Sterling E. Norris and Paul J. Orfanedes for Plaintiff and Appellant.

Jones Day, Elwood Lui, Erica L. Reilley and Charlotte S. Wasserstein for Defendants and Respondents.

\*                \*                \*

# I.  INTRODUCTION

In 2008, plaintiff Harold Sturgeon successfully sued Los Angeles County, and the suit reverberated throughout the state.  Sturgeon asserted that Los Angeles County's practice of paying fringe or "supplemental" benefits to the county's superior court judges contravened article VI, section 19, of the state Constitution, which provides the *Legislature* is to prescribe the compensation for judges.[1]  (*Sturgeon v. County of Los Angeles* (2008) 167 Cal.App.4th 630 (*Sturgeon I*).)  An appellate court agreed, holding the duty of prescribing compensation for judges could not be delegated to a county.  (See *id.* at pp. 642-644 [discussing problem of legislative delegation in context of the meaning of the word "prescribe"].)

In immediate response to *Sturgeon I*, the Legislature added section 68220 to the Government Code.[2]  At the very least, section 68220 provides that trial judges in office as of July 1, 2008, shall continue to receive the same county benefits they were receiving on that date.  Sturgeon then unsuccessfully challenged the new legislation on two grounds:  (1) It still allowed counties the choice of whether to pay supplemental benefits at all; and (2) it left existing disparities in judicial benefits between the various counties intact.  (*Sturgeon v. County of Los Angeles* (2010) 191 Cal.App.4th 344 (*Sturgeon II*).)  The same appellate panel that issued *Sturgeon I* rejected the attack on section 68220.  It reasoned there were sufficient "safeguards" in the statute's notice requirement to prevent counties from terminating benefits in a manner inconsistent with the "broad policies" set down by the Legislature, so the benefits could continue.  (*Id.* at p. 354 (*Sturgeon II*).)

---

[1]     "The Legislature shall prescribe compensation for judges of courts of record."

[2]     All undesignated statutory references in this opinion are to the Government Code unless otherwise indicated.  All undesignated references to any subdivision therein are to section 68220 of the Government Code.

The court in *Sturgeon II* also observed the new legislation was but an "interim measure." (*Sturgeon II, supra*, 191 Cal.App.4th at p. 354.) The court said it was "not a permanent response to either the constitutional issues we identified in *Sturgeon I* or the difficult problem of adopting a compensation scheme that deals with varying economic circumstances in an equitable and efficient manner." (*Id*. at p. 355.) It predicted that unless the Legislature enacted a more "comprehensive response" to the issue of state trial judge compensation, future litigation would be initiated, either by taxpayers like Sturgeon or perhaps by judges. (*Id*. at pp. 355-356.) But then the court added a second forecast: "We are confident that the Legislature within a reasonable period of time will act to adopt a uniform statewide system of judicial compensation." (*Id*. at p. 356.)

In Greek mythology, Cassandra's punishment for refusing to have sex with Apollo was a "gift" of accurate prophecy accompanied by the curse of having no one listen to her. The *Sturgeon II* court's forecast of further litigation was certainly right, as the present case demonstrates. But the Legislature did not heed the prediction of future legislation on the point. Now Sturgeon has once again challenged Los Angeles County's continued payment of supplemental benefits to all the judges of the Los Angeles County Superior Court, including judges who took office *after* July 1, 2008. And we must respond to Cassandra.

We affirm the dismissal of Sturgeon's challenge to the Los Angeles County practice. As we explain below, the Legislature built better than it knew. Properly construed, section 68220 *requires* those counties paying supplemental benefits as of July 1, 2008, to continue paying them on the same terms and conditions as were in effect on July 1, 2008, and to pay them to *all* judges of the county's superior court, not just those judges who held office as of July 1, 2008. Counties thus have no discretion under section

68220 to fix compensation – it has *already* been fixed by the Legislature. As so construed, the statute complies with article VI, section 19 of the California Constitution.

## II. FACTS

Because of the nature of Sturgeon's challenge in the present appeal, we must provide short summaries of the relevant parts of *Sturgeon I* and *Sturgeon II*. *Sturgeon I* held that the word "compensation" in article VI, section 19 of the California Constitution – as in the relatively modern phrase "compensation package" – includes the sort of supplemental benefits which Los Angeles County had been voluntarily paying to its county judges. The chief benefit was the county's contribution to a "cafeteria" benefit plan[3] that includes medical insurance. Under the terms of Los Angeles County's plan, if the contribution isn't used up in a given year, the balance is paid to the judge as taxable income. It is as if the judges are on the *county* payroll for that portion of their "compensation." (See *Sturgeon I, supra*, 167 Cal.App.4th at pp. 635.)

The *Sturgeon I* court determined the benefits provided by the county were indeed "compensation," and as such "must be prescribed by the Legislature." (*Sturgeon I, supra*, 167 Cal.App.4th at p. 644 [rejecting equivalence of salary and compensation].) The court rejected Los Angeles County's fallback position that the Legislature had indeed "prescribed" superior court compensation by enacting section 69894.3 and passing the Lockyer-Isenberg Trial Court Funding Act of 1997 (Lockyer-Isenberg), which made the state responsible for the funding of trial court operations (see *Sturgeon I, supra*, 167 Cal.App.4th at p. 640).[4] Section 69894.3 allows superior court judges, by local court

---

[3] So called because the beneficiary can choose from a selection of benefits as would a cafeteria patron choosing food items.

[4] Los Angeles County was careful not to take the broad position that the Legislature could partially delegate the fixing of judicial compensation to the various counties. That would have been inconsistent with a Supreme Court decision in the wake of a 1924 constitutional revision – former article VI, section 11 – that had squarely placed the matter of judicial compensation in the hands of the Legislature. (See *Sevier v. Riley* (1926) 198 Cal. 170 (*Sevier*).) Much of *Sturgeon I* is an explication of the problem of delegation of the issue of compensation in light of *Sevier* (see *Sturgeon I, supra*, 167 Cal.App.4th at p. 642) and the later Supreme Court case of *Kugler v. Yocum* (1968) 69 Cal.2d 371 (see *Sturgeon I, supra*, 167 Cal.App.4th at pp. 652-654).

4

rule, to be treated as employees of the county in which they work.[5]  Lockyer-Isenberg authorizes payment of supplemental benefits by individual counties.  The *Sturgeon I* court said neither section 69894.3 nor Lockyer-Isenberg qualified as legislative prescriptions of compensation.  Neither "required" the payment of benefits or "set any standard or safeguard which regulate[s] the size or the conditions" under which benefits "should be paid."  (*Id.* at p. 656.)  The individual counties had the "*option*" of providing, or not providing, benefits.  And if benefits were provided, those benefits could be provided without limitation or amount.  (*Ibid.*)

In sum, *Sturgeon I* held that neither 69894.3 nor Lockyer-Isenberg could be said to reflect the Legislature's "fundamental policy" regarding trial judge benefits, much less contain any "safeguards" to assure compliance with such a policy.  (*Sturgeon I, supra*, 167 Cal.App.4th at p. 656.)  The court therefore reversed a favorable judgment entered upon Los Angeles County's summary judgment motion.

Because *Sturgeon I* was a reversal of a judgment entered after summary judgment, the decision only returned the case to its status prior to the county's summary judgment motion.  The court did not direct a verdict for plaintiff Sturgeon.  That procedural posture allowed some time for the Legislature to analyze the decision's implications and act upon them.  Governor Schwarzenegger called the Legislature into special session to consider the state's economy in early December 2008 (*Sturgeon II, supra*, 191 Cal.App.4th at p. 349), and a product of that special session was section 68220, passed as part of a Senate Bill now known under the exotic title of "SB X2 11" (X2 11) in February 2009.  (*Sturgeon II, supra*, 191 Cal.App.4th at p. 349.)  We will exegete section 68220 in part III below, but for now all that need be said is that Sturgeon immediately challenged section 68220.  The result was *Sturgeon II*.

---

[5]      Section 69894.3 provides in pertinent part:  "Employment by the court shall be deemed to be employment by the county, if approved by rule of court, for the purpose of determining a court employee's rights with respect to a county's ordinances providing for salary step advancements and other employee benefits and rights, including, but not limited to, amount of compensation, vacations, sick leave, and accumulated sick leave."

There, Sturgeon made two arguments against the new legislation:  (1)  The opt-out provision still didn't comply with article VI, section 19 because it left to counties the choice of whether to pay supplemental benefits at all; and (2) section 68220 did nothing to deal with the "disparity" in supplemental county benefits to judges across the state.  (*Sturgeon II, supra*, 191 Cal.App.4th at pp. 353-355.)

As to Sturgeon's first argument – the room for choice still left to the counties – the *Sturgeon II* court said there were now sufficient safeguards in section 68220 to prevent counties from inequitably countermanding "the Legislature's fundamental decision to continue benefits" because the "lengthy notice period" would give the Legislature "ample time" to rescind any termination of benefits the Legislature thought inappropriate.[6]  As to Sturgeon's second argument – leaving the disparities in the status quo intact – the *Sturgeon II* court essentially said those disparities pass a rational basis test because geographically-based discrimination is not a "suspect classification," and – though the court didn't say this quite as bluntly as we are about to – some counties need more than others to assure a higher level of compensation to attract qualified judges. (See *Sturgeon II, supra*, 191 Cal.App.4th at pp. 354-355.)

Then *Sturgeon II* added a coda, rather clearly intended to prod the Legislature to further action.  In its final paragraph, the opinion stressed that X2 11 was "the Legislature's *interim* response to *Sturgeon I*," and if the Legislature didn't come up with a "more comprehensive response," more litigation would "most likely" follow, either from "taxpayers or members of the bench themselves."  (*Sturgeon II, supra*, 191

---

6  Two other ideas were adduced in that part of the discussion:  (1) The court said the "face" of X2 11 made it clear that the Legislature "intended to recognize that benefits were paid as a means of attracting qualified judicial officers and that judges have a reasonable and legitimate expectation the benefits previously paid by each county or court will be part of their compensation"; and  (2) the requirement of a report from the Judicial Council identifying "inconsistencies in the payment of benefits" indicated the Legislature was to retain a hand in the process. (*Sturgeon II, supra*, 191 Cal.App.4th at p. 354.)  We stress the third of the three reasons given by the *Sturgeon II* court – the Legislature's de facto veto power over termination of otherwise required benefits – because it is the one rationale that *directly* affects whatever arguable discretionary wiggle room section 68220 is left the counties in regard to supplemental benefits.

Cal.App.4th 355.) As we have noted, the *Sturgeon II* court also predicted the Legislature would soon enact a more permanent "uniform statewide system of judicial compensation." (*Id*. at p. 356.) And as we have also noted, it hasn't.

Hence, *Sturgeon III*. Sturgeon filed this action on April 1, 2014, against Los Angeles County and its board of supervisors for having authorized the payment of supplemental benefits – the 2013 value of which was about $57,000 per judge – the total cost to the county being in excess of $24.6 million in 2013. Again, as in *Sturgeon I* and *Sturgeon II*, his standing was based on his status as a taxpayer seeking to prevent the illegal expenditure of county funds.[7] His theory is best encapsulated in his first cause of action for declaratory relief: that the "continued payment of 'supplemental judicial benefits' to the judges of the Superior Court [of Los Angeles County] in the absence of the adoption, by the Legislature, of a permanent, statewide, comprehensive judicial compensation scheme as contemplated by Senate Bill X2 11 . . . is . . . unlawful."

Sturgeon filed his complaint in this action, as he had in *Sturgeon I* and *Sturgeon II*, in Los Angeles County. As in the previous cases, the entire court immediately recused itself.[8] The Judicial Council then assigned this case to an Orange County Superior Court judge, Kirk Nakamura. When Judge Nakamura sustained Los Angeles County's demurrer without leave to amend, the matter came to this Division of the Fourth Appellate District. Sturgeon made a motion to transfer the matter to Division One of this District, which had issued *Sturgeon I* and *Sturgeon II*. Los Angeles County's

---

[7] Code of Civil Procedure section 526a states: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein. This section does not affect any right of action in favor of a county, city, town, or city and county, or any public officer; provided, that no injunction shall be granted restraining the offering for sale, sale, or issuance of any municipal bonds for public improvements or public utilities. [¶] An action brought pursuant to this section to enjoin a public improvement project shall take special precedence over all civil matters on the calendar of the court except those matters to which equal precedence on the calendar is granted by law."

[8] Both *Sturgeon I* and *Sturgeon II* were considered at the trial level by James A. Richman, a Justice of the Court of Appeal from Northern California who had previously sat as a trial judge in Alameda County.

opposition to the transfer motion pointed out that Sturgeon had initially taken the position the prior litigation had been decided "too long ago" to be related so there was no compelling reason to transfer it out of this division. It also pointed out that the Los Angeles Superior Court had, in the process of the transfer to Judge Nakamura's court, made an order that local Orange County rules would apply to the case, the upshot of which was that Sturgeon had plenty of notice the case might end up in Division Three but had done nothing about it. The transfer motion was denied by the Presiding Justice of this Division.

## III. DISCUSSION

Sturgeon made two arguments against the constitutionality of newly enacted section 68220 in *Sturgeon II*: The statute left the choice of whether to pay benefits at all to the counties (as provided for in opt-out subdivision (b)) and also left existing disparities in judicial compensation around the state intact. Both arguments were based on article VI, section 19, and *Sturgeon II* rejected both arguments. He makes the same arguments again, but his new challenge is not barred by res judicata or collateral estoppel. It is true that in the immediate aftermath of the February 2009 passage of X2 11, almost every judge in the state had his or her supplemental benefits (if any) fixed by the Legislature, but the same cannot be said six years later. Sturgeon's argument is that the passage of time has made what was constitutional unconstitutional.

This "passage of time" argument contains at its core an issue and a claim that was not considered by the *Sturgeon II*: Does what section 68220 says about judges who took office *after* July 1, 2008, make it unconstitutional? This question has not previously been raised so it is not barred by previous decisions in the case, and we must address it.

In its entirety, section 68220 says: "(a) Judges of a court whose judges received supplemental judicial benefits provided by the county or court, or both, as of

8

July 1, 2008, shall continue to receive supplemental benefits from the county or court then paying the benefits on the same terms and conditions as were in effect on that date.

"(b) A county may terminate its obligation to provide benefits under this section upon providing the Administrative Director of the Courts and the impacted judges with 180 days' written notice. The termination shall not be effective as to any judge during his or her current term while that judge continues to serve as a judge in that court or, at the election of the county, when that judge leaves office. The county is also authorized to elect to provide benefits for all judges in the county."

Here is Sturgeon's argument based on section 68220 framed in the most cogent terms we can manage: Section 68220, subdivision (a) *requires* that the judges who were receiving county supplemental benefits as of July 1, 2008, continue to be paid the same benefits, but subdivision (b) gives counties the *option* of paying, or not paying, new judges benefits, and does not specify the amount of any such benefits. Thus, while section 68220 might have been constitutional in the immediate aftermath of the February 2009 passage of X2 11 – when almost all the judges in Los Angeles County would have had their benefits fixed by the Legislature,[9] – the passage of six years means that there is now a substantial number of new judges whose compensation is, in effect, being fixed by the county rather than the Legislature. As to those *new* judges, Los Angeles County's continued payment of supplemental benefits does not comply with article VI, section 19 of the California Constitution because the County has too much discretion concerning their benefits.

At the core of this argument is, we think, a misreading of subdivision (a). Look closely at the words of subdivision (a), noting precisely how the Legislature defined the set of judges who are to receive benefits: "Judges *of a court whose judges received supplemental judicial benefits provided by the county or court, or both, as of July 1,*

---

[9] Presumably only judges who took office between July 2, 2008 and the February 2009 passage of X2 11, wouldn't have been covered by the legislation as passed, which would have been a miniscule number.

9

*2008*, shall continue to receive supplemental benefits from the county or court then paying the benefits on the same terms and conditions as were in effect on that date." (§ 68220, subd. (a), italics added.)

Subdivision (a) is plain and unambiguous. Those judges who "shall" receive benefits are defined *not* by the fact *they* received benefits back in July 2008, but by the fact they *now* serve on a court where "judges received supplemental benefits" in July 2008. As such, the statute establishes a very tight fit between what the Legislature enacted and any actual compensation paid. There is no room for county choice other than a toggle switch opt-out provision in subdivision (b), and even then the individual counties have no role in fixing compensation. The counties pay at the level prescribed in subdivision (a), or they pay nothing. Thus the Legislature, not the counties, has "prescribed" the supplemental benefits, pegging them to a number readily ascertainable and beyond any county's control. The result is thus completely in accord with the meaning of the word "prescribed" as used in article VI, section 19 of the California Constitution. (See *Kugler v. Yocum, supra,* 69 Cal.2d 371 [upholding tying pay of firefighters of one city to pay of firefighters of another]; *Martin v. County of Contra Costa* (1970) 8 Cal.App.3d 856 [upholding tying of employees of municipal and marshal's office to that of other county employees].)

There is, of course, a question raised by our interpretation, but we do not think it determinative. The question involves the last sentence of subdivision (b), which says: "The county is also authorized to elect to provide benefits for all judges in the county." That sentence describes what might be read as an "opt-in" possibility, in juxtaposition to the first two sentences that provide a more detailed "opt-out" possibility. It could be understood to imply some judges might not be covered by subdivision (a) because there are still some judges left to be opted-in for coverage.

That last sentence of subdivision (b), read alone, is consistent with Sturgeon's reading of subdivision (a) of the statute. If subdivision (a) is a mere

10

grandfather clause for judges in office as of July 1, 2008, and benefits are not required of all judges thereafter appointed or elected, then subdivision (b) tells counties they still have the *option* of elect[ing] to extend benefits to the new judges. Moreover, it is hard to think of a function served by subdivision (b) that *is not* predicated on the assumption that subdivision (a) only covers judges in office as of July 1, 2008, and is otherwise silent as to judges who took office afterwards. And we must, if possible, avoid interpretations that render a word or provision of a statute surplusage. (*Hudec v. Superior Court* (2015) 60 Cal.4th 815, 828 ["Such a construction is, of course, to be avoided if possible."].)

Furthermore, Sturgeon's interpretation coincides with the interpretation put on subdivision (a) by the Legislative Counsel: "This bill would provide that judges who received supplemental judicial benefits provided by a county or court, or both, as of July 1, 2008, shall continue to receive supplemental benefits from the county or court then paying the benefits on the same terms and conditions as were in effect on that date." (2009 Cal. Legis. Serv. 2nd Ex. Sess. Ch. 9 (S.B. 11) (West) at p. 1.)

While we greatly respect the legislative counsel, and the traditional canon against surplusage as applied to subdivision (b), we nevertheless believe it is the plain language of subdivision (a) which must control in the circumstances of this case. There are three reasons we so conclude:

(1) *The plain, mandatory language of subdivision (a)* supports our ruling: Turning first to the Legislative Counsel's reading, we find it unpersuasive because of the clarity of subdivision (a). The Legislative Counsel's paraphrase of subdivision (a) redefines the set of judges entitled to benefits under the subdivision. That paraphrase left out the qualifying clause "of a court whose judges received." That is unusual language. It is not first draft language; it is a painstaking, carefully considered organization of words that illuminates the content of the statute. The text of subdivision (a) doesn't limit the set of judges entitled under the subdivision to judges who received benefits as of a certain date, but includes *all* judges of a court whose judges received benefits as of a

11

certain date.  That is very unusual and particular phraseology.  And the difference – at least for judges who took office after July 2008 – is the difference between lightning and a lightning bug.  (See *In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 811, fn. 7 [small differences in language can make big differences in legal effects].)  As the Supreme Court said in *People v. Hudson* (2006) 38 Cal.4th 1002, 1009:  "Because the language of a statute is generally the most reliable indicator of the Legislature's intent, we look first to the words of the statute, giving them their ordinary meaning and construing them in context.  If the language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.  [Citations.]"  (Accord, *Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 ["it is the language of the statute itself that has successfully braved the legislative gauntlet"].)  This language is not only unambiguous, it is meticulous and carefully chosen.  We cannot ignore it.

(2) *The canon against surplusage should not be invoked when it leads to an unreasonable result*.  The canon against surplusage is not absolute.  (*King v. Burwell* (2015) ___ U.S. ___, 135 S.Ct. 2480, 2492 ["But 'our preference for avoiding surplusage constructions is not absolute.'  [Citations.]"]; *Marx v. General Revenue Corp.* (2013) 568 U.S. ___, 133 S.Ct. 1166, 1177 ["The canon against surplusage is not an absolute rule"].)  If invocation of the canon results in an unreasonable reading of the legislation, it should be discarded.  As our colleagues in Division One put it in *Park Medical Pharmacy v. San Diego Orthopedic Associates Medical Group, Inc.* (2002) 99 Cal.App.4th 247, 254, fn. 5, "While it is true that a construction that renders part of a statute to be surplusage should be avoided [citation], this rule is not absolute and 'the rule against surplusage will be applied *only if it results in a reasonable reading of the legislation*' [citation]."  (Italics added.)

Here, letting this last sentence tail of subdivision (b) wag subdivision (a) leads to a most unreasonable reading of the statute – one contrary to the broader purpose

12

of the statute and, worse, contrary to the Constitution. The express purpose of the statute was to deal with *Sturgeon I*. Uncodified section 1 of X2 11 provided: "It is the intent of the Legislature to address the decision of the Court of Appeal in Sturgeon v. County of Los Angeles (2008) 167 Cal.App.4th 630, regarding county provided benefits for judges." (2009 Cal. Legis. Serv. 2nd Ex. Sess. Ch. 9 (S.B. 11) (West) at p. 2.) But if subdivision (a) *doesn't* cover all judges, including those who took office after July 2008, then X2 11 really *didn't* address *Sturgeon I*. Section 68220 would only be good for that short period of time between July 2008 and the appointment or election of some more-than-de minimis number of trial court judges somewhere down the road.

If there were some clear indicia that the Legislature intended such a truncated lifespan for X2 11 – say, a sunset provision to move the Legislature to act again in a few months – the last sentence of subdivision (b) might have greater force. But there is no such thing. The most that can be said in favor of the "short life" theory of X2 11 is that it provided (in uncodified § 6) that the Judicial Council was to report to certain legislative committees "analyzing the statewide benefits inconsistencies" in such compensation. (2009 Cal. Legis. Serv. 2nd Ex. Sess. Ch. 9 (S.B. 11) (WEST) at p. 3.)[10] But reference to a report in contemplation of future action is a pretty slender reed upon which to hang a conclusion the Legislature intended its handiwork to self-destruct after a few years.

How many of us have attempted some sort of household repair, hoping it would last for the indefinite future but still hoping – if we ever get around to it – to come back one day and do a better job? The Legislature can reasonably be expected to act in accordance with the human characteristics of the members who make it up, and that is what we think happened here. So while it may not be a perfect solution to *Sturgeon I*,

---

[10] And indeed such a report was prepared. (See Judicial Council of California, Historical Analysis of Disparities in Judicial Benefits: Report to the Senate Committee on Budget and Fiscal Review, the Assembly Committee on Budget, and the Senate and Assembly Committees on Judiciary (Dec. 15, 2009) (hereinafter Judicial Council Report).)

13

subdivision (a) is plainly written and provides for a status quo that may go on indefinitely without offending the Constitution.  If the Legislature wants to climb up on the roof and give it a more permanent fix in the future, they are free to do so, but this one is still holding.

(3) *The last sentence of subdivision (b) is, on its face, unconstitutional under Sturgeon I.*  The last sentence of subdivision (b) says nothing about the *amount* of benefits if the county does decide to "elect to provide benefits for all" its judges.  But under *Sturgeon I* – indeed under the text of the Constitution itself – counties most assuredly cannot decide the *level* of compensation paid to superior court judges.  (See *Sturgeon I, supra*, 167 Cal.App.4th at p. 656 [status quo unconstitutional where counties could provide benefits without limitation or amount].)  Certainly we are not compelled to follow a canon that injects unconstitutionality into a statutory scheme, and at oral argument counsel for Sturgeon conceded this interpretation would be unconstitutional.  As between an interpretation of a statute that renders it unconstitutional in operation, and an interpretation that makes it constitutional even though it jettisons a sentence, we must of course choose the latter.  (See *People v. Chandler* (2014) 60 Cal.4th 508, 526-527; *Steen v. Appellate Division, Superior Court of Los Angeles County* (2014) 59 Cal.4th 1045, 1054; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1373.)

Indeed, it appears the Legislature may itself have recognized the problem of the open-ended last sentence of subdivision (b).  Uncodified section 7 of X2 11 provides a severability clause tailor-made for the last sentence of subdivision (b):  "The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application."  Given the highly problematic nature of the last sentence of subdivision (b), we must oblige the Legislature in this regard.

*The bottom line*:  Section 68220 subdivision (a) plainly requires any county paying its judges supplemental benefits as of July 1, 2008 to continue to pay its judges

14

supplemental benefits, including all judges who took office after July 1, 2008 – albeit subject to the right of the county in the first two sentences of subdivision (b) to terminate those benefits after specified notice. The county has no choice and no discretion to "fix" judicial compensation, which has thus been prescribed by the Legislature. The opt-out provisions of the first two sentences of subdivision (b) provide the only choice a county has in that situation, and even then there's no fixing of compensation, just a choice to pay the prescribed amount or not to pay any supplemental compensation at all. The last sentence of subdivision (b) is unconstitutional surplusage.

## IV. CONCLUSION

We hold that section 68220, properly construed – that is, recognizing that the last sentence of subdivision (b) must be discarded as unconstitutional surplusage – allows Los Angeles County to continue paying *new* judges who took office after July 1, 2008, supplemental benefits on the same terms and conditions as it was paying judges in office on July 1, 2008.

In the spirit of *Sturgeon II*, we offer these further comments: Even though it is not required, the Legislature may want to revisit the trial court compensation problem. Groups as diverse as Judicial Watch[11] and the Daily Kos[12] continue to inveigh against county payments to trial judges. The 2009 Judicial Council Report which section 6 of X2 11 authorized noted wide disparities in judicial compensation around the state. Judges of the Superior Court of Los Angeles County now receive supplemental benefits worth about $57,000.[13] By contrast, judges in the Superior Courts of Alpine, Inyo, and San Benito Counties receive no supplemental benefits at all.[14] These are among the disparities in compensation around the state the Legislature might care to consider. Or

---

[11] Sturgeon's counsel in this and all previous cases.

[12] See Fine, *End California's Judicial Corruption Now; Stop 2015-16 Illegal Budget Payments to Judges!* (June 1, 2015) <http://dailykos.com/story/2015/06/02/1389761/-End-California-s-Judicial-Corruption> [as of Aug. 25, 2015].)

[13] Judicial Council Report at page 17.

[14] Judicial Council Report at page 16.

15

might not.

The judgment of dismissal is affirmed.  In the interests of justice each side will bear its own costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.

16